OPINION
Defendant, Gregory J. Bruggeman, appeals from a judgment decree of divorce terminating his marriage to Plaintiff, Margaret N. Bruggeman.
Gregory[1] and Margaret were married in 1987. Three children were born of the marriage. Margaret filed a complaint for divorce on May 5, 1999. Gregory filed an answer and counterclaim on June 1, 1999. The issues were heard by the court on November 5, 1999.
On November 15, 1999, the court entered a final judgment and decree of divorce. The court granted the divorce to both parties pursuant to R.C.3105.17(A)(9), finding that they had lived physically separate and apart for more than one year. Margaret was granted custody of the three minor children. Gregory was ordered to pay child support and spousal support. The court also imposed a sanction on Gregory's attorney, ordering him to pay a witness whom he'd subpoenaed to testify at the divorce hearing for wages the witness lost as a result.
Gregory filed a timely notice of appeal. He presents eight assignments of error for review.
 FIRST ASSIGNMENT OF ERROR THE TRIAL COURT ERRED IN IMPOSING SANCTIONS UNDER CIV.R. 11 AGAINST MR. BRUGGEMAN'S ATTORNEY WITHOUT HAVING AN EVIDENTIARY HEARING TO FIND COUNSEL ACTED WILLFULLY IN VIOLATION OF THE RULE.
 SECOND ASSIGNMENT OF ERROR THE TRIAL COURT COMMITTED PREJUDICIAL ERROR IN IMPOSING SANCTIONS UNDER RULE 11, AS THERE WAS NO WILLFUL VIOLATION OF RULE 11 IN SUBPOENAING MR. RICK Johnston TO TESTIFY AS TO THE VALIDITY OF MR. BRUGGEMAN'S GROUNDS FOR DIVORCE STATED IN HIS COUNTERCLAIM.
These assignments of error both concern the sanction imposed by the court on Gregory's attorney.
On October 29, 1999, Gregory's attorney caused a subpoena to issue to Richard Johnston, requiring him to appear and testify on Gregory's behalf at the November 5, 1999 divorce hearing. Though Gregory was the Defendant, the court permitted Gregory's attorney to proceed first in order to call Mr. Johnston as a witness.
Gregory's attorney questioned Mr. Johnston about his current friendship with Margaret and whether he intends to marry her. Mr. Johnston testified that he and Margaret first met in July 1998, but that they had become friends and developed a close relationship in the past several months. He testified that he took some meals at Margaret's home and had spent weekends there when the children were away with their father.
At the conclusion of Mr. Johnston's direct testimony, the court inquired how long he'd been at court. Mr. Johnston replied that he'd been there for about five hours and that Gregory's attorney had refused to release him from his subpoena. As a result, his work was interrupted and he'd lost income at the rate of $85 per hour for the hours he'd been at court. The court then stated:
 "THE COURT: Okay. Well, you can step down now. You're free to go. I calculate that at $425. Since defendant subpoenaed you in here today, and did not have one relevant question to ask you that is pertinent to this case, I will assess $425 against the defendant and order him to pay that to you within 7 days.
MR. DEMARCO: I beg your pardon?
 THE COURT: Mr. DeMarco, you can put your objections in writing.
MR. DEMARCO: Fine. I will.
 THE COURT: If you have objections to that, put them in writing.
MR. DEMARCO: I will.
THE COURT: Plaintiff can proceed."
(T. 7-8).
Gregory's attorney filed no written objections to the court's order. In the decree of divorce, which issued ten days after the hearing, the court stated:
 "The court notes that defendant subpoenaed to trial one Rick Johnston. Mr. Johnston has dated the plaintiff since the parties' separation. That fact is the entire substance of the few questions which defendant's counsel asked Mr. Johnston at trial. Not one question was asked which would be relevant to any contested issue of property division, debt division, allocation of parental rights, or support. Defendant claims the purpose of subpoenaing this witness to trial was to establish grounds. However, (1) defendant admitted to his own adultery while the parties were still living together; (2) defendant refused an offer to stipulate to grounds of incompatibility; (3) defendant admitted that the parties had lived separate and apart for a period in excess of one year prior to trial, thereby establishing adequate grounds for a divorce to both parties; and (4) defendant's counsel did not disclose at the pretrial conference that grounds would be an issue, although the pretrial conference was conducted specifically for the purpose of identifying contested issues.
 It is apparent to the court that the counsel for defendant subpoenaed Mr. Johnston to court for the sole purpose of harassing Mr. Johnston and harassing the plaintiff. This type of litigation conduct is indefensible in any court action, especially in a divorce action, and most especially when the interests of children are at stake. As a result of this litigation misconduct, Mr. Johnston lost five hours of productive employment, at $85 per hour. The court assesses this litigation cost against defendant's counsel. Although defendant may have instigated and enjoyed the appearance of Mr. Johnston at trial, it is not defendant who is charged with the legal responsibility of knowing there was no good ground to support the subpoena, and it is not defendant who signed the subpoena.
Alex V. DeMarco, Esq. is hereby ordered to pay the sum of $425 to the witness Rick Johnston, forthwith."
(Decree, p. 20).
The court expressly relied on the authority conferred on it by Civ.R. 11 and Mont.Loc.D.R.R. 4.34(C) to impose the sanctions on Attorney DeMarco.
Civ.R. 11 provides that an attorney's signature to a pleading constitutes a certificate that, to the best of his knowledge, information, or belief, there is good ground to support it and that it has not been filed for purposes of delay.
 The signature is the attorney's or pro se party's affirmation to the court that the pleading, motion, or paper is not a sham, vexatious, or frivolous. Under one theory, a sham motion appears good in form but has no factual basis, a vexatious motion is made maliciously and without probable cause for the purpose of annoying and embarrassing one's opponent, or it is not calculated to lead to any practical result; and a frivolous motion takes a position outside the bounds of the well-settled law, and a good faith argument cannot be made for an extension, modification, or reversal of the existing law. At least one decision has subscribed to this theory.
 The signature is required so that the court may ascertain the precise person to be subject to disciplinary action or sanctions in the event that the pleading, motion, or paper was signed with intent to defeat the purpose of Rule 11.[2]
Civ.R. 11 states: "For a willful violation of this rule an attorney . . . may be subject to appropriate action, including an award to the opposing party of expenses and reasonable attorney's fees incurred in bringing any motion under this rule." Before the court can impose sanctions, therefore, there must be a determination of willfulness as opposed to mere negligence. Ceol v. Zion Indus., Inc. (1992),81 Ohio App.3d 286. A trial court's order imposing sanctions will not bedisturbed absent an abuse of discretion. Burns v. Henne (1996),115 Ohio App.3d 297, citing State ex rel. Fant v. Sykes (1987),29 Ohio St.3d 65.
A pleading, motion, or other paper is not a sham, vexatious, or frivolous if there are good legal grounds to support it. Gregory's attorney argues that there were at least two good legal grounds to support the subpoena he caused to issue to Mr. Johnston. First, he argues that the evidence that he might elicit from Mr. Johnston could be probative of Gregory's claim of adultery, which were grounds for divorce alleged in his counterclaim. Second, he argues that evidence of Mr. Johnston's current relationship with Margaret could be probative of the best interests of the minor children relative to the issue of child custody.
Adultery is a statutory ground for divorce in Ohio. R.C. 3105.17(A)(3). Gregory would, therefore, be entitled to the divorce he sought upon proof of Margaret's adulterous conduct. However, and contrary to his arguments here, Gregory did not allege adultery as grounds for divorce in his counterclaim. Any evidence he might offer of her adulterous conduct is subject to objection as irrelevant to the claims for relief the court was required to determine. Therefore, counsel's argument that Mr. Johnston might be called to prove adultery is without foundation.
The court was required by R.C. 3109.04(A) to make an order allocating the parental rights and responsibilities for the care of the parties' three children. In making those determinations, the court must "take into account that which would be in the best interest of the children." R.C. 3109.04(B)(1). When it determines the best interest of a child, the court must consider, inter alia, "[t]he child's interaction andinterrelationship with his parents, siblings, and any other person whomay significantly affect the child's best interest." R.C. 3109.04(F)(1(c).The effect of a child's contact with a parent's paramour is one suchconsideration. Wilder v. Wilder (Feb. 5, 1985), Franklin App. No. 84AP-604, unreported.
Gregory's counsel inquired of Mr. Johnston concerning his visits to Margaret's home. Mr. Johnston replied that Margaret invited him for dinner there "maybe twice a week, and except for when we do not have the children in her care and they're with (Gregory) then, we do the weekend." (T. 5). He explained that this might not happen every weekend, but when it did he stayed "over the weekends when we don't have the kids." (T. 6).
Mr. Johnston's relationship with Margaret and his contact with the parties' minor children created a potential for the kind of "interaction and interrelationship" that R.C. 3109.04(F)(1)(c) requires the court to consider in making a best interest determination. However, the cursory inquiries that Gregory's attorney made of Mr. Johnston concerning the matter offered no basis on which a finding reasonably could be made. The inquiry was not only unproductive; it also permitted the court to find that counsel had subpoenaed Mr. Johnston maliciously and without probable cause for the purpose of annoying and embarrassing Margaret, without any view toward a practical result in the litigation. The court could reasonably conclude that the subpoena was a vexatious motion, one for which the court was authorized to impose sanctions per Civ.R. 11.
We do not say, nor do we intend to say, that the productivity of a motion is the paramount test for sanctions under Civ.R. 11. Some witnesses are so evasive that little is obtained from them, notwithstanding their true knowledge of the facts. However, when little effort is made to prove that knowledge, to no real effect, the lack of productivity is counsel's own doing. Then, and especially when there is good reason to conclude that counsel's purpose in calling the witness is to harass an opposing party, sanctions are appropriate.
Gregory's attorney also argues that, even if a sanction is permitted for his conduct, the amount is excessive. He argues that the litigants and their witnesses were kept waiting by the court for five hours past the scheduled time of the hearing, suggesting that the loss and inconvenience the witness suffered is the court's responsibility and not his. We do not agree. Though the delay was considerable, the record does not reflect why it occurred. Having occurred, however, it exacerbated counsel's misconduct with respect to the subpoena he issued for Mr. Johnston.
The Second Assignment of Error is overruled on the foregoing analysis. In his first assignment of error, Gregory complains that the trial court failed to afford his attorney a hearing before it determined that his misconduct was willful, per Civ.R. 11. We agree that a hearingordinarily is required. Here, however, counsel's own failure to developany evidence of a material and probative nature from Mr. Johnston'stestimony made the element of willfulness manifest. Further, counselfiled no objections explaining his conduct, as the court had indicated hecould do. On this record, therefore, we cannot find that Gregory'sattorney was prejudiced by the lack of a separate hearing. The FirstAssignment of Error is also overruled.
 THIRD ASSIGNMENT OF ERROR THE TRIAL COURT ERRED WHEN IT AWARDED MR. BRUGGEMAN THE TRUCK THAT HE SOLD TO PAY THE JANUARY 1999 HOUSE PAYMENT, FOR THE FAMILY RESIDENCE ON POSTON DRIVE.
Gregory sold a pick-up truck for $1,000 after the parties separated. The trial court awarded him the truck as a part of his share of the marital property. The court also ordered him to pay Margaret a like amount to equalize their respective shares of the marital estate.
Gregory argues that the trial court abused its discretion because he sold the truck in order to pay the mortgage obligation on the marital residence where Margaret had continued to live. Margaret argues she was unaware of the sale or its purpose, and that the trial court found against Gregory on his claim because it found that it lacked credibility.
Gregory does not tell us where in the record his claim is substantiated by evidence, except that he was having trouble making the mortgage payment. (T. 81). That fact does not demonstrate that he applied the proceeds he received from the sale of the truck to that purpose. Even if he did, it was only to satisfy an obligation the court had imposed on him, one that is properly reflected in the court's subsequent division of the marital property. Therefore, and acting on the presumption of regularity we afford proceedings in the trial court, the claim is rejected.
The third assignment of error is overruled.
 FOURTH ASSIGNMENT OF ERROR THE TRIAL COURT ERRED IN INCLUDING IN THE MARITAL ASSETS THE 401K PLAN THAT MR. BRUGGEMAN ENROLLED WHILE EMPLOYED AT PANASONIC.
The decree of divorce states: "The trial court finds that the duration of the marriage for purposes of property division and spousal support determination(s) was from the date of the marriage to the date of the separation." The record shows that the parties separated in June of 1997. Therefore, any property that either acquired thereafter is not subject to division as marital property, which is property that either acquired "during the marriage." R.C. 3105.171(A)(3)(a).
The court entered its duration of marriage finding pursuant to R.C.3105.171(A)(2)(b). That provision operates as an exception to Division (A)(2)(a) of that section, which establishes "the date of the final hearing in an action for divorce" as the conclusion of the "duration of the marriage" period for property division purposes. Acting on that basis, the court awarded each party "any property and accounts acquired in their own names since the parties' separation." (Decree, p. 3). The court then also made the following order concerning Gregory's retirement fund:
 [401k PLAN] The defendant at the time of separation owned approximately $3,900 in a Panasonic 401k Plan. This sum, plus all accrued interest in the plan, is a marital asset. Defendant shall forthwith "roll over" into a tax-sheltered account of the plaintiff's designation one half of the balance existing in this account as of the date of transfer. If defendant has removed any funds from this account, he shall redeposit the same amount for division. The defendant is entitled to retain any deposits which he or his employer made into this account since June 30, 1997.
(Decree, p. 5).
Gregory complains that the court abused its discretion when it awarded Margaret any share in his Panasonic 401k plan. He points out that she testified that he was working at another job prior to their separation. As this creates an inference that he was not then working at Panasonic, Gregory argues, Margaret's failure to introduce any evidence that he was employed at Panasonic prior to their separation entitles him to the entire value of the plan.
The "duration of the marriage" exception in Division (b) of R.C.3105.171(A)(2) represents another effort to legislatively fine tune the issues involved in a divorce that inevitably runs afoul of the mutabilities of the adversarial process. It imposes an obligation on the court to make orders for which neither party may have offered supporting evidence. In contentious litigation, which this divorce was, the prospects that an inconsistency will result are only increased.
Nevertheless, we do not agree that Margaret's failure to prove when Gregory's Panasonic 401k plan was acquired and accrued entitles him to the whole amount as his separate property. Division (b) of R.C.3105.171(A)(2) operates as an exception to the date of decree mandate of Division (a), one which benefits the party in whose name the asset is then held. It is the burden of that party to offer evidence probative of the exception in Division (b), evidence which necessarily shows when the asset was acquired in relation to the separation date. Here, that was Gregory's burden, not Margaret's. Her failure to offer the proof does not entitle him to more than the court awarded him.
The fourth assignment of error is overruled.
FIFTH ASSIGNMENT OF ERROR
 THE TRIAL COURT ERRED WHEN IT FAILED, AT THE REQUEST OF COUNSEL FOR MR. BRUGGEMAN, TO APPOINT A GUARDIAN AD LITEM TO PROTECT THE INTERESTS OF THE MINOR CHILDREN, ESPECIALLY IN REGARDS TO STEPHANIE BRUGGEMAN.
The parties' daughter, Stephanie, fractured her wrist while using the diving board and swimming pool at the home of Margaret's attorney. Gregory argues that the trial court should have appointed a guardian adlitem to represent Stephanie's interest in a potential claim for relief against Margaret's attorney. Gregory claims that he "requested the appointment of a guardian ad litem for the children." (Brief, p. 9).
This issue arose during Gregory's cross-examination. He was asked whether his insurance would cover Stephanie's injuries and whether he intended to file a lawsuit against Margaret's attorney for Stephanie's personal injuries. Gregory replied that he had not decided whether to file a claim. At that point his attorney objected, stating that "[t]he child may be in need of a guardian ad litem because . . ." (T. 111). The court overruled his objection.
It is unclear why Gregory's indecision about whether to sue Margaret's attorney for Stephanie's personal injuries would warrant appointment of a guardian ad litem. In any event, we cannot find that Gregory articulated the request with the degree of particularity required to find that the court erred or abused its discretion when it overruled the objection in which the suggestion was made.
The fifth assignment of error is overruled.
 SIXTH ASSIGNMENT OF ERROR THE TRIAL COURT IS NOT CONSIDERING THE TIMELY FILED MOTION AND PLAN FOR SHARED PARENTING FILED BY MR. BRUGGEMAN.
Gregory filed a proposed shared parenting plan on October 20, 1999. In its decree of divorce, the court stated:
 The court finds that the best interests of the minor children require that the mother be designated as the residential parent and legal custodian (and child support obligee). The father is designated the noncustodial parent (and child support obligor). The court finds that there exists a "parent and child relationship" as defined in R.C. 3111.01 between the parties and the children named for all purposes. In making this custody determination the court has carefully considered its own investigation and the evidence, all as related to the statutory factors which the court must consider pursuant to R.C. 3109.04.
(Decree, p. 6).
R.C. 3109.04(D)(1(a)(i) requires the court to approve and adopt a shared parenting plan that the parties jointly propose if the court finds that the plan is in the best interest of the child or children involved. If each parent files a plan, or but one does, the court may approve the plan on a best interest finding, or order its modification, or order the other parent to file a plan, or reject the proposed plan(s) and "proceed as if the request or requests or the motion or motions had not been made." R.C. 3109.04(D)(1)(a)(iii).
The trial court found "that the best interests of the minor children require that (Margaret) be designated as the residential parent and legal custodian (and child support obligee.)" The court also stated that it had considered the statutory factors in R.C. 3109.04. Division (F)(1) of that section sets out the factors to be considered in a "best interest" determination.
Implicit in the court's custody order is a determination that Gregory's shared parenting plan was not in the best interest of the children. The court is not required to make express findings to support that determination. Neither is it required to order modifications or the other party to submit alternative plans. Those measures are discretionary. Thus, the record does not support Gregory's claim that the court failed to consider his plan. Instead, it shows that the court considered the plan and rejected it, as it was authorized to do.
The sixth assignment of error is overruled.
 SEVENTH ASSIGNMENT OF ERROR THE TRIAL COURT ABUSED ITS DISCRETION IN AWARDING MRS. BRUGGEMAN SPOUSAL SUPPORT OF $300 A MONTH.
Gregory argues that the court abused its discretion in accepting the evidence that Margaret had offered to demonstrate her need for spousal support. He complains that she lacked substantiation of certain bills, lied about other obligations, and has more income that she claimed. These matters go to her credibility as a witness, and is properly a matter for determination by the trial court, which has heard the witnesses. We defer to that determination.
The seventh assignment of error is overruled.
 EIGHTH ASSIGNMENT OF ERROR THE TRIAL COURT COMMITTED PREJUDICIAL ERROR WHEN IT DIVIDED THE MARITAL DEBTS WITHOUT ANY CREDIBLE EVIDENCE AS TO THE DEBTS ON THE DATE OF SEPARATION.
Margaret testified concerning the balances owed on five credit card accounts as of May of 1998. Her evidence was obtained from telephone calls to the credit card companies. Gregory complains that she should have offered written statements from those companies showing the balances owed. He apparently offered no evidence of his own concerning the amounts owed.
Again, credibility of the witnesses is a matter for the trial court to determine. The court found Margaret credible. Gregory cannot complain that the court erred in so doing when he offered no evidence of his own contrary to the claims Margaret made.
The eighth assignment of error is overruled.
 Conclusion
Having overruled the assignments of error presented, we will affirm the judgment and decree of divorce from which this appeal was taken.
 _____________________ GRADY, P.J.,
WOLFF, J., concurs.
[1] For clarity and economy, the parties will be identified by their first names.
[2] Baldwin's Ohio Civil Practice, Section AT11-6, citing Browne, TheSignificance of the Signature: A Comment on the Obligations Imposed byCivil Rule 11, 30 Clev. St. L.Rev. 385 (1981), and Stevens v. Kiraly
(1985), 24 Ohio App.3d 211.