DECISION AND JUDGMENT ENTRY
{¶ 1} In these three consolidated cases, Jerry and Judy Patton appeal the trial court's decisions (1) granting summary judgment to Sandra and Charles Arnold, Jr. regarding their claim for deed reformation, (2) granting summary judgment to Jean Ditmyer and First National Bank of Nelsonville (collectively "Ditmyer") regarding their claim for adverse possession, and (3) awarding the Arnolds and Ditmyer attorney fees under R.C. 2323.51.
 {¶ 2} In Case Number 05CA12, the Pattons first assert that the court erred by determining that no genuine issues of material fact remained regarding the Arnolds' deed reformation claim. Because the evidence shows that the parties intended to convey just the Arnolds' home and the surrounding property and that they did not intend to convey Ditmyer's house and the land upon which it sits, the court properly determined that a mutual mistake occurred that justified reforming the deed. Thus, the Pattons' first argument is meritless.
 {¶ 3} They further argue that the court's decision reforming the deed infringes their rights under the Marketable Title Act. Because the Pattons readily could have discovered that Ditmyer's house sat upon Lot 707, the doctrine of caveat emptor relieves the Arnolds of liability. Consequently, the Pattons' second assignment of error is without merit.
 {¶ 4} The Pattons next contend that the court erred by determining that no genuine issues of material fact remained regarding Ditmyer's adverse possession claim. Because the evidence shows that Ditmyer and her predecessors-in-title have been in open, continuous, exclusive, and adverse use of the property for twenty-one years or more, the court did not err by entering summary judgment on this claim. Thus, the Pattons' third assignment of error is meritless.
 {¶ 5} In Case Numbers 05CA21 and 05CA22, the Pattons argue that the trial court erred by awarding attorney fees to the Arnolds and Ditmyer. First, they assert that the court improperly considered the proceedings in the underlying case. The Pattons failed to object when opposing counsel requested the court to consider the pleadings from the underlying case. Thus, they waived this argument. Even had they properly preserved the issue for appellate review, we would find no error. A court may take judicial notice of the proceedings in the case before it. Thus, the Pattons' first assignment of error is meritless.
 {¶ 6} Second, the Pattons argue that the court erred by failing to find that they advanced a good faith argument for an extension or modification of existing law or for the establishment of new law. The Pattons' assertion that the deed conveyed Ditmyer's lot but not the house disregarded the law of fixtures and was not a good faith argument for the extension or modification of existing law. Their argument that Ditmyer did not own the lot by adverse possession likewise was not a good faith argument for the extension or modification of existing law. The evidence unequivocally shows that Ditmyer and her predecessors-in-title have been in open, notorious, continuous, and adverse possession of Lot 707 for at least twenty-one years. The Pattons really had no legitimate claim to the property but merely relied upon an obvious error to seek a windfall. Their conduct in filing the complaint and seeking $100,000 in damages was frivolous and fully justified the court's decision to award the Arnolds and Ditmyer attorney fees. Therefore, the Pattons' second assignment of error is without merit.
 {¶ 7} Third, the Pattons contend that the court erred by awarding the Arnolds attorney fees because the deed purported to convey Lot 707 and contained express warranties. Again, their argument ignores the law of fixtures. They cannot legitimately claim ownership of just the lot upon which Ditmyer's home sits. Moreover, the Pattons rely upon an obvious error in claiming ownership of Lot 707. They never intended to purchase Ditmyer's home. They only intended to purchase the Arnolds' home. Consequently, the Pattons' third assignment of error is meritless.
 {¶ 8} Fourth, the Pattons assert that the court improperly awarded the Arnolds and Ditmyer attorney fees because they failed to show what part of the fees they incurred as a direct result of the frivolous conduct. The Pattons further contend that the court failed to find what part of the fees the Arnolds and Ditmyer incurred as a result of the frivolous conduct. Because the Pattons stipulated to the reasonableness of the attorney fees and only disputed whether their conduct was frivolous, they waived this argument. Additionally, nothing in the statute required the court to enter written findings. Thus, the Pattons' fourth assignment of error is without merit.
 {¶ 9} Accordingly, we overrule all of the Pattons' assignments of error in Case Numbers 05CA12, 05CA21, and 05CA22, and affirm the trial court's judgment.
 I. {¶ 10} In July of 2002, Jerry and Judy Patton offered to purchase 17606 12th Street, in Nelsonville, Ohio, from Sandra and Charles Arnold, Jr., for $38,000. The offer described the property as a "house and 4 parcels."
 {¶ 11} On September 27, 2002, the parties closed the real estate transaction. The Pattons did not view the land survey before closing. The deed described the property granted as follows:
 "Situated in the Village of Buchtel, County of Athens and State of Ohio described as follows: Being the South half of Lot Number Seven Hundred and Five (705) and Lots Number Seven Hundred and Six (706) and Seven Hundred and Seven (707). Beginning at a stake twenty-five (25) feet south of the Northeast corner of Lot #705; thence south on the East line of Lot #705 and lot #706 and Lot #707 to the Southeast corner of Lot #707; thence west along south line of Lot #77 to the Southwest corner of the said lot; thence north along the West line of Lots #707 and #706 and to the center line of Lot #705; thence east along the center line of Lot #705 to a stake, the place of beginning. Also the west half of the vacated street or alley east of the south half of Lots 705 and Lots 706 and 707 in the Village of Buchtel."
 {¶ 12} After the closing, the Pattons obtained the land survey and discovered that Jean A. Ditmyer's house sat upon Lot 707.
 {¶ 13} Ditmyer's home address is 17586 12th Street. The Pattons admit that they never intended to purchase Ditmyer's home, but they did intend to purchase "a house and four lots."
 {¶ 14} On January 24, 2003, Jerry and Judy Patton filed a complaint against Ditmyer and the Arnolds, among others. They alleged that: (1) the Arnolds breached the general warranty covenant; (2) Ditmyer obstructed their property by having her house situated upon lot 707; (3) Ditmyer's house is encroaching upon their property; (4) Ditmyer is trespassing; and (5) Ditmyer's home constitutes a nuisance. The Pattons requested the court to eject Ditmyer from the premises, to declare that they are the owners of Lot 707, to grant a mandatory injunction requiring Ditmyer to remove the house from Lot 707, and to enter judgment against the Arnolds and Ditmyer in the amount of $100,000.
 {¶ 15} Ditmyer filed a counterclaim alleging that she owns Lot 707 under the doctrine of adverse possession. She requested the court to quiet title to the property in her favor. The Arnolds counterclaimed for deed reformation.
 {¶ 16} All parties subsequently filed summary judgment motions. On August 6, 2004, the court granted the Arnolds' summary judgment motion. The court found that no genuine issues of material fact remained regarding the Arnolds' deed reformation claim. The court determined that the parties were mutually mistaken as to the correct legal description of the Arnolds' property and that the evidence showed that neither party intended the sale to include Ditmyer's property. The court found that the Pattons intended to purchase, and the Arnolds to sell, only one residence. The court concluded that "[a]ny other result is patently unreasonable and would yield an undeserved and unbargained-for windfall for the Pattons." The court thus reformed the deed to read as follows:
 "Situated in the Village of Buchtel, County of Athens, and State of Ohio described as follows:
 Being the south half of Lot number Seven Hundred and Five (705) and Lot number Seven Hundred and Six (706).
 Beginning at a stake twenty five (25) feet south of the northeast corner of Lot #705, thence south on the east line of Lot #705 and Lot #706 to the southeast corner of Lot #706; thence west along the south line of Lot #706 to the southwest corner of the said lot; thence north along the west line of Lot #706 and to the center line of Lot #705; thence east along the center line of Lot #705; thence east along the center line of Lot #705 to a stake, the place of beginning.
 Also the west half of the vacated street or alley east of the south half of Lot #705 and Lot #706 in the Village of Buchtel."
 {¶ 17} Later, the court granted Ditmyer's summary judgment motion. The court determined that because it ordered the deed reformed as to Lot 707, the Pattons could not claim record ownership of it. The court found that to the extent the Pattons claimed ownership of Lot 707, no genuine issues of material fact remained regarding Ditmyer's adverse possession claim. The court thus quieted title to Lot 707 in Ditmyer's favor.
 {¶ 18} The Arnolds and Ditmyer subsequently requested the court to award them attorney fees under R.C. 2323.51. They asserted that the Pattons' claims were frivolous.
 {¶ 19} On March 30, 2005, and continuing on April 7, 2005, the court held an attorney fee hearing. At the hearing, the Pattons' counsel stipulated to the reasonableness of the fees incurred. In support of their request for attorney fees, Arnolds' counsel referred to the Pattons' amended complaint and asserted that the court could take judicial notice of it. The court agreed, and the Pattons did not object.
 {¶ 20} On May 13, 2005, the court awarded attorney fees to Ditmyer. The court found that: (1) the Pattons understood that they were purchasing the Arnolds' property under the rules of caveat emptor and assumed the risks about the size of the property; (2) the Arnolds made no representations regarding the size of the property; (3) the Pattons did not know where the property line was located that divided the Arnolds' property from Ditmyer's property; and (4) the Pattons admitted that they did not intend to purchase Ditmyer's home. The court noted that the Pattons attached a survey to their amended complaint that contained "the interlineations `not ours' with an arrow pointing to Jean Ditmyer's residence, on Lot 707." The court determined that this proved that when the Pattons filed the amended complaint, they and their attorney "were completely aware * * * that the Pattons had no claim of ownership to the Ditmyer residence." Mr. Patton testified that they filed suit "in an effort to force a compromise." Mr. Patton admitted that the Ditmyer home has been in its current location at least since 1966. The court found that the Pattons' theory that they own the land but not the residence "ignores the principles of the law of fixtures and adverse possession." The court stated: "There is no authority in Ohio supporting the Pattons and their attorney's claim that the Pattons own the land under a home that was constructed, by Jerry Pattons' admissions, at least 38 years ago. As early as 1853, the Ohio Supreme Court recognized that three criteria are used to identify what constitutes a fixture. `A fixture is an article which was a chattel, but which by being physically annexed or affixed to the realty, became accessory to it and part and parcel of it.' Teaff v. Hewitt (1853),1 Ohio St. 511, 527." The court noted that the Ohio Supreme Court used a similar definition in a 2000 case, Litton Systems, Inc. v. Tracy (2000),88 Ohio St.3d 568, 572, 728 N.E.2d 389. The court found that it could not be argued in good faith that the law of fixtures or adverse possession should be modified or reversed. The court noted that the parties stipulated to the reasonableness of the fees and found that Ditmyer has been adversely affected by the Pattons' and their attorney's conduct.
 {¶ 21} The court also granted the Arnolds' request for attorney fees. The court noted that the Pattons alleged that the Arnolds breached the general warranty deed covenants by failing to disclose that Ditmyer's house sat on Lot 707, a lot for which they never bargained. The court determined that the Pattons advanced an argument that is not warranted: "separation of a permanent fixture from the real estate on which it is attached, in the instant proceedings a permanent fixture, Defendant, Ditmyer's, residence, is constructed on a parcel of real estate which residency was not part of the bargain." The court found that the Pattons admitted the mistake yet continued to oppose reformation of the deed and that they advanced an argument not warranted under existing law and that cannot be supported by a good faith extension of the law.
 {¶ 22} The Pattons timely appealed the court's decisions granting summary judgment to the Arnolds regarding their deed reformation claim and to Ditmyer regarding her adverse possession claim. They also timely appealed the court's decisions awarding the Arnolds and Ditmyer attorney fees. We have consolidated the three appeals.
 II CASE NUMBER 05CA12 {¶ 23} In Case Number 05CA12, the Pattons raise the following assignments of error: "I. The trial court committed reversible error by reforming the Arnold-Patton deed and not following the intention of the parties indicated in the subject deed and contract." "II. [T]he trial court committed reversible error by invalidating appellants' general warranty deed by granting appellees Arnolds' motion for summary judgment which reformed the deed and thus unfairly infringed upon appellants' rights under R.C. 5302.04, 5302.06 and the Marketable Title Act (R.C. 5301 et seq.)." "III. The trial court committed reversible error by granting defendant-appellee Ditmyer sole possession of lot 707 by adverse possession when Ditmyer was barred by promissory estoppel in her mortgage on lot 708 from asserting adverse possession."
 A Summary Judgment Standard {¶ 24} The Pattons' three assignments of error assert that the trial court erred by entering summary judgment in the Arnolds' and Ditmyer's favor. Summary judgment is appropriate only when the evidentiary materials demonstrate that: (1) no genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) reasonable minds can come to only one conclusion, and that conclusion is adverse to the nonmoving party. Civ.R. 56(C); see, e.g., Armstrong v. Best Buy, 99 Ohio St.3d 79,2003-Ohio-2573, 788 N.E.2d. 1088, at ¶ 15. In ruling on a motion for summary judgment, the court must construe the record and all inferences in the nonmoving party's favor. See, e.g., Doe v. First United MethodistChurch (1994), 68 Ohio St.3d 531, 535, 629 N.E.2d 402.
 {¶ 25} We review a trial court's summary judgment decision de novo. See, e.g., Grafton v. Ohio Edison Co. (1996), 77 Ohio St.3d 102, 105,671 N.E.2d 241. Accordingly, we independently review the record to determine if summary judgment was appropriate and need not defer to the trial court's decision. See Brown v. Scioto Bd. of Commrs. (1993),87 Ohio App.3d 704, 711, 622 N.E.2d 1153; Morehead v. Conley (1991),75 Ohio App.3d 409, 411-12, 599 N.E.2d 786.
 B Deed Reformation {¶ 26} In their first assignment of error, the Pattons assert that the trial court erred by entering summary judgment in the Arnolds' favor regarding the Arnolds' deed reformation claim. They contend that the court, by reforming the deed, disregarded the parties' intention as expressed in the deed and in the purchase contract. They claim that by reforming the deed, the court allowed the Arnolds to keep the consideration paid for Lot 707 and the Pattons received nothing. The Pattons additionally claim that the court improperly relied upon parol evidence when reforming the deed. The Pattons further argue that the court's decision constitutes a taking without just compensation.
 {¶ 27} Equity allows reformation of a written instrument when, due to a mutual mistake on the part of the original parties to the instrument, the instrument does not evince the parties' actual intention. SeeMason v. Swartz (1991), 76 Ohio App.3d 43, 50, 600 N.E.2d 1121. "The purpose of reformation is to cause an instrument to express the intent of the parties as to the contents thereof * * *." Delfino v. Paul DaviesChevrolet, Inc. (1965), 2 Ohio St.2d 282, 286, 209 N.E.2d 194. "[Reformation of a contract is appropriate where the written agreement does not accurately reflect the true understanding of the parties, and it is used to effectuate their true intent." Concrete Wall Co. v. BrookPark (Feb. 26, 1976), Cuyahoga App. Nos. 34054, 34090, 34171, citingGreenfield v. Aetna Cas. Ins. Co. (1944), 75 Ohio App. 122,61 N.E.2d 226. "The purpose of reformation is not to make a new agreement but to give effect to the one actually made by the parties, which is not accurately reflected in the written agreement." Concrete Wall Co.
 {¶ 28} A person seeking reformation of a written instrument must prove by clear and convincing evidence that the mistake regarding the instrument was mutual. See Stewart v. Gordon (1899), 60 Ohio St. 170,53 N.E. 797, paragraph one of the syllabus; Justarr Corp. v. Buckeye UnionIns. Co. (1995), 102 Ohio App.3d 222, 225, 656 N.E.2d 1345. Clear and convincing evidence is the degree of evidence necessary to elicit in the mind of the trier of fact a firm belief or conviction as to the allegations to be established. See In re Haynes (1986),25 Ohio St.3d 101, 104, 495 N.E.2d 23.
 {¶ 29} To be entitled to deed reformation based upon a mutual mistake, the mistake must be material. See Reilley v. Richards (1994),69 Ohio St.3d 352, 352-353, 632 N.E.2d 507. "A mistake is material to a contract when it is `a mistake * * * as to a basic assumption on which the contract was made [that] has a material effect on the agreed exchange of performances.' 1 Restatement of the Law 2d, Contracts (1981), 385, Mistake, Section 152(1). Thus, the intention of the parties must have been frustrated by the mutual mistake." Id. Reformation of a deed is available upon a showing that both parties were mistaken as to what was being conveyed. See Stewart v. Gordon (1899), 60 Ohio St. 170,53 N.E. 797.
 {¶ 30} In Castle v. Daniels (1984), 16 Ohio App.3d 209,475 N.E.2d 149, the court concluded that reformation of the deed was appropriate when the evidence showed that the parties were mutually mistaken as to the property conveyed. In Castle, the appellees conveyed a lot to the appellants by warranty deed. The deed described the property conveyed as the entire lot, which included a hay field in the northeast corner of the lot upon which sat a barn. The appellees asserted that the parties did not intend the real estate transaction to include the hay field and barn. The deed also described property that was owned by a third party, Lucy McClung. The appellants conceded that the parties did not intend her property to be part of the transaction.
 {¶ 31} A survey plat showed that the hay field and barn were not part of the lot, and neither was McClung's property. Testimony existed that the appellants were aware of the lot boundaries. The appellees stated that they showed the appellants the boundaries before closing the real estate transaction.
 {¶ 32} The court determined that the evidence showed that the parties were mutually mistaken as to the land that the deed conveyed. The court recognized that the appellants disputed that a mutual mistake occurred, but stated:
 "`[T]he mere fact that the parties at the time of trial testify differently as to what their agreement was does not necessarily mean that there was no agreement between them, nor does it necessarily mean that they were not mutually mistaken concerning the expression of their agreement in the instrument; in this respect, it has been pointed out that if the fact alone that the parties testify differently at the trial would prevent a finding that there was an agreement between the parties, a court could never determine whether there was a contract in a lawsuit where the parties disagree and testify differently.' 13 Ohio Jurisprudence 3d (1979) 363, Cancellation, etc. of Instruments, Section 76."
Id. at 212. The court thus affirmed the trial court's judgment reforming the deed based upon mutual mistake.
 {¶ 33} In Dornbirer v. Conrad (Nov. 20, 2000), Perry App. No. 99CA26, the court concluded that deed reformation was the appropriate remedy when the deed conveyed land that was not intended to be included as part of the real estate transaction but was nonetheless included in the deed. In Dornbirer, the deed conveyed 3.5 acres that was not intended to be part of the purchase agreement. See, also, Kevern v. Kevern (1917),11 Ohio App. 391 (finding that the deed mistakenly conveyed land that the parties never intended to be part of the real estate transaction and stating "[i]t is inconceivable to us that [the buyer] should have intended to buy and [the seller] to sell a lot of land with a house partially on it").
 {¶ 34} In the case at bar, the evidence indisputably and clearly and convincingly shows that the parties were mutually mistaken as to the land conveyed. Thus, the trial court did not improperly enter summary judgment in the Arnolds' favor. The evidence unequivocally shows that the Arnolds did not intend to sell Ditmyer's home or the land upon which it sits. Her home and property were not offered for sale to the Pattons and the Pattons did not view it, and could not have reasonably viewed it, as part of the real estate transaction. The Pattons admit that they did not intend to purchase Ditmyer's residence. Only after the fact, i.e., after the land survey was complete and after they discovered that Ditmyer's home sat on a lot named in the deed that the Arnolds executed, did they claim an interest in Ditmyer's property. At the time that the deed was executed, the Pattons never believed that the deed conveyed Ditmyer's home or the land upon which it sits. The parties' "outward manifestations" show that they "believed that the intended conveyance was different from that contained in the deed." See Castle,16 Ohio App.3d at 213. The parties did not intend Ditmyer's house and the land upon which it sits to be part of the real estate transaction.
 {¶ 35} The Pattons' claim that they intended to purchase the land upon which Ditmyer's house rests but not her home is specious. At no time did anyone represent to them that the purchase included the land upon which Ditmyer's house sits. The Pattons never stated that they looked at Ditmyer's land and thought it was part of the real estate transaction. They should not be permitted to take advantage of an obvious error that would result in them receiving an unbargained-for windfall. While they claim to have bargained for "a house and four lots," they could not reasonably have thought that one of those lots was under Ditmyer's house.
 {¶ 36} The Pattons' claim that the court could not consider parol evidence is meritless. In an action for reformation, parol evidence may be used to discern the parties' intentions. See, e.g., PepperpikeProperties Ltd. Partnership v. Wilson (Jan. 31, 2002), Cuyahoga App. No. 79711; Mason v. Swartz (1991), 76 Ohio App.3d 43, 600 N.E.2d 1121;Castle, 16 Ohio App.3d at 212. As the court explained inCastle: "[W]here an action in reformation is commenced, credible testimony concerning the conduct of the parties, any course of dealing between them, and the method of handling the specific transaction in question are entitled to great weight in determining the ultimate facts; to wit, the agreement."
 {¶ 37} Furthermore, the Pattons' assertion that the court's decision constitutes a taking without just compensation is meritless. The purchase price of $38,000 was for the Arnolds' home and the land that the Pattons reasonably viewed at the time of the offer to purchase as the Arnolds' land. For the Pattons to assert that they paid $38,000 for the Arnolds' home and Ditmyer's home is absurd. The Pattons never paid any compensation for the land upon which Ditmyer's house sits. Thus, the court's decision cannot constitute a taking without compensation. They did not intend to purchase the land and the land was not part of the purchase price of the Arnolds' home. The court's decision reforming the deed keeps the parties in the position they thought they would be in when they entered into the real estate transaction and does not deprive the Pattons of due process of law.
 {¶ 38} Accordingly, we overrule the Pattons' first assignment of error.
 C Warranty Covenants {¶ 39} In their second assignment of error, the Pattons argue that the trial court erred by invalidating the general warranty deed. They argue that the court's decision granting the Arnolds summary judgment and reforming the deed unfairly infringed upon their rights under R.C.5302.04, R.C. 5302.06, and the Marketable Title Act, R.C. 5301 et seq.[1] The Pattons additionally claim that the Arnolds did not honor their warranties under the deed.
 {¶ 40} The Arnolds and Ditmyer assert that because the Pattons could have discovered the alleged adversity in title, the doctrine of caveat emptor precludes the Pattons' claim and relieves the Arnolds of liability.
 {¶ 41} In property transactions, there is no right to rely upon representations regarding the property transferred where the true facts are equally open to both parties. See Traverse v. Long (1956),165 Ohio St. 249, 252, 135 N.E.2d 256. When any adversities regarding title to property are of public record and therefore easily discoverable, the purchaser of the property is not entitled to rely upon the seller's alleged misrepresentations. See Noth v. Wynn (1988), 59 Ohio App.3d 65,67-68, 571 N.E.2d 446. Thus, the doctrine of caveat emptor precludes a disappointed purchaser's recovery against a seller when: (1) the defect or condition is open to observation or discoverable on reasonable inspection; (2) the purchaser had unimpeded opportunity to examine the property; and (3) the seller did not engage in affirmative misrepresentation or concealment so reprehensible in nature as to constitute fraud. See Traverse, 165 Ohio St. at 252; Layman v.Binns (1988), 35 Ohio St.3d 176, 179, 519 N.E.2d 642.
 {¶ 42} Applying these principles, courts have routinely dismissed, as a matter of law, fraud and misrepresentation claims related to land size or lot boundaries when the true size or boundaries are readily discoverable or otherwise made known to the purchasers during the transaction. For example, in Ralston v. Grinder (1966),8 Ohio App.2d 208, 221 N.E.2d 602, the purchasers brought an action for fraud based upon false oral representations by the seller and seller's agent that the property purchased contained three acres when, in fact, it contained less than 1.5 acres. Id. at 208-209. In upholding a directed verdict for the defendants, the Ninth District Court of Appeals recognized that while the defendants' statements relating to the property size were false, caveat emptor precluded plaintiff's fraud claim as a matter of law: "The [plaintiffs] cannot be heard to deny that their own negligence created the situation about which they now complain." Id. at 210; see, also, Parahoo v. Mancini (Apr. 14, 1998), Franklin App. No. 97APE08-1071 (caveat emptor barred claim when information readily discoverable through public records); Van Horn v. Peoples Banking Co. (1990),64 Ohio App.3d 745, 747, 582 N.E.2d 1099 (finding that caveat emptor barred appellant's claim when he had the opportunity to investigate but failed to do so); Finomore v. Epstein (1984), 18 Ohio App.3d 88, 91,481 N.E.2d 1193 ("Since all of the adversities regarding title to the properties were of public record and therefore easily discoverable, appellee had no right to rely upon any alleged oral misrepresentations.").
 {¶ 43} Although no case has directly applied the doctrine of caveat emptor to bar a claim for breach of a general deed warranty or failure to convey marketable title, we see no reason why it should not apply to the claims in the case at bar. In the deed and the purchase agreement, the Arnolds represented that they owned Lot 707. This turned out to be false. Because the Pattons readily could have discovered that Ditmyer's house sat on Lot 707 by reviewing the land survey and ensuring that they reviewed it before closing on the property, they had no right to rely upon the Arnolds' representation that they conveyed Lot 707. Because the Pattons could have readily discovered the actual boundaries of the property they were purchasing and that Ditmyer's house sat on Lot 707, caveat emptor bars their claims.
 {¶ 44} Accordingly, we overrule the Pattons' second assignment of error.
 D Adverse Possession {¶ 45} In their third assignment of error, the Pattons assert that the court erred by finding that no genuine issues of material fact remained regarding Ditmyer's adverse possession claim. The Pattons contend that Ditmyer cannot claim adverse possession because she never paid taxes on Lot 707, because her mortgage indicated she owned Lot 708, and because she did not know that her house sat on Lot 707. The Pattons further argue that her "public-record assertion that she owns Lot 708 in her mortgage with First National Bank of Nelsonville refutes any inference of adverse possession" and that "by virtue of [her] mortgage" she "is promissorily estopped from asserting adverse possession as to Lot 707."
 {¶ 46} Ditmyer asserts that the court properly granted summary judgment regarding her adverse possession claim. She notes that the Pattons have not disputed the affidavit evidence she submitted tracing the open, notorious, continuous and adverse use of Lot 707 for at least twenty-one years. Regarding the Pattons' promissory estoppel claim, Ditmyer asserts that the claim must fail because the Pattons do not have privity of contract with Ditmyer, because they do not have a contractual relationship, and because they did not plead it.
 {¶ 47} Adverse possession is established when a party proves by clear and convincing evidence that he has been in open, notorious, continuous, adverse and exclusive possession of the disputed property for at least twenty-one years. See, e.g., Grace v. Koch (1998), 81 Ohio St.3d 577,579, 692 N.E.2d 1009. An individual may tack on a prior property owner's adverse use in order to establish the twenty-one year possession. SeeLyman v. Ferrari (1979), 66 Ohio App.2d 72, 76, 419 N.E.2d 1112, citingZipf v. Dalgarn (1926), 114 Ohio St. 291, 296, 151 N.E. 174.
 {¶ 48} Adverse or hostile use is any use that is inconsistent with the rights of the title owner. See Vanasdal v. Brinker (1985),27 Ohio App.3d 298, 500 N.E.2d 876, citing Kimball v. Anderson (1932),125 Ohio St. 241, 244, 181 N.E. 17. Thus, it is irrelevant if everyone believes the owner of the strip of land in question to be the party claiming adverse possession. Id. at 299. As the court explained inVanasdal: "The fact that everyone believed the strip in dispute actually belonged to Vanasdal so that no one challenged his use of the land earlier is also immaterial. The doctrine of adverse possession protects one who has honestly entered and held possession in the belief that the land was his own, as well as one who knowingly appropriates the land of others for the purpose of acquiring title. Yetzer v. Thoman (1866),17 Ohio St. 130; Montieth v. Twin Falls United Methodist Church (1980),68 Ohio App.2d 219, 222, 428 N.E.2d 870." Id.
 {¶ 49} Additionally, the title owner need not have "actual knowledge of adverse use." Id. Instead, "[t]he owner is charged with knowledge of adverse use when one enters into open and notorious possession of the land under a claim of right." Id.
 {¶ 50} In the case at bar, no genuine issues of material fact remain regarding Ditmyer's adverse possession claim. The evidence shows that she and her predecessors-in-title have openly, continuously, adversely, and exclusively possessed the property known as Lot 707 for at least twenty-one years. Ditmyer acquired her home on June 30, 1994, from Stephen Harvey Lawrence. Lawrence acquired the property from Nelsonville Pallet, Inc., in May of 1983. Nelsonville Pallet acquired the property from Harrison and Barbara Runyon in February of 1983. The Runyons acquired the property from the administrator of the estate of Clyde Kinneer in 1966. These owners, in succession, have occupied the land upon which the house sits, Lot 707, since at least 1966.
 {¶ 51} The Pattons' argument that Ditmyer's use was not adverse because she did not know that her land sat upon lot 707 is without merit. As the court explained Vanasdal, adverse use may be established even though the landowners are mutually mistaken as to the right to use the land. See, also, Keish v. Russell (Sept. 11, 1996), Athens App. No. 95CA1686 (holding that use may be adverse even though adjoining property owners were mistaken about who owned the driveway); Papesh v. Gem BoatService (Aug. 31, 1990), Ottawa App. No. OT-89-18 (holding that the use of property under a mistaken belief of ownership is sufficient to constitute a claim of right).
 {¶ 52} We disagree with the Pattons' assertion that Ditmyer's adverse possession claim must fail because she did not pay real estate taxes on the property. A litigant's failure to raise an issue in the trial court waives the litigant's right to raise that issue on appeal. SeeShover v. Cordis Corp. (1991), 61 Ohio St.3d 213, 220, 574 N.E.2d 457, overruled on other grounds in Collins v. Sotka (1998),81 Ohio St.3d 506, 692 N.E.2d 581. Here, the Pattons did not raise the argument regarding Ditmyer's nonpayment of real estate taxes in opposition to Ditmyer's summary judgment motion. Instead, they raised it in defense to Ditmyer's request for attorney fees, after the court already granted Ditmyer summary judgment. Thus, because they did not timely raise this issue, the Pattons have waived it.
 {¶ 53} Furthermore, had the Pattons properly preserved the issue for appellate review, we would find it meritless. We have found no Ohio case that requires a property owner to have paid real estate taxes in order to successfully claim adverse possession.
 {¶ 54} The Pattons' promissory estoppel claim does not apply to the facts in the case at bar. Promissory estoppel is an equitable doctrine. The doctrine provides: "`[A] promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise.'" Worthington v. Speedway SuperAmerica LLC, Scioto App. No. 04CA2938, 2004-Ohio-5077. Ditmyer did not make any promise to the Pattons. Thus, the doctrine does not apply.
 {¶ 55} Accordingly, we overrule the Pattons' third assignment of error and affirm the trial court's decisions granting the Arnolds and Ditmyer summary judgments.
 III CASE NUMBERS 05CA21 AND 05CA22 {¶ 56} The Pattons raise the following assignments of error in case numbers 05CA21 and 05CA22: "I. The trial court erred by considering evidence not included in the record of the hearing on attorney's fees, and by taking judicial notice of its own proceedings." "II. Plaintiffs advanced a good faith argument for an extension or modification of existing law, or in the alternative a good faith argument for establishment of new law in presenting their case." "III. The trial court erred in granting attorney's fees to defendants Arnold in light of the deed granted to plaintiffs, which purported to convey lot 707 and contained express warranties." "IV. The trial court erred in awarding attorney's fees, where plaintiffs failed to affirmatively show, and the court to find, what portion of the attorney's fees incurred were a direct and proximate cause of the alleged frivolous conduct."
 A Judicial Notice {¶ 57} In their first assignment of error, the Pattons argue that the trial court erroneously considered evidence that the parties did not introduce at the attorney fee hearing by taking judicial notice of the proceedings in the underlying case.
 {¶ 58} The Arnolds and Ditmyer assert that the court properly considered the proceedings in the underlying action. Ditmyer further argues that the Pattons waived the argument by failing to raise it in the trial court.
 {¶ 59} Because the Pattons did not object to the trial court's consideration of the underlying proceedings, they have waived all but plain error. See Goldfuss v. Davidson (1997), 79 Ohio St.3d 116, 121,679 N.E.2d 1099. The plain error doctrine is not favored in civil proceedings and "may be applied only in the extremely rare case involving exceptional circumstances where error, to which no objection was made at the trial court, seriously affects the basic fairness, integrity, or public reputation of the judicial process, thereby challenging the legitimacy of the underlying judicial process itself." Id. at syllabus. The case at bar is not one of those extremely rare cases.
 {¶ 60} Even if the Pattons had objected, their argument is meritless. While a trial court may not take judicial notice of prior proceedings in the court, it may take judicial notice of prior proceedings in the immediate case. See State v. Blaine, Highland App. No. 03CA9,2004-Ohio-1241, citing Diversified Mortgage Investors, Inc. v. AthensCty. Bd. of Revision (1982), 7 Ohio App.3d 157, 159, 454 N.E.2d 1330, and D B Immobilization Corp. v. Dues (1997), 122 Ohio App.3d 50, 53,701 N.E.2d 32. The rationale for this rule is that, if a trial court takes notice of a prior proceeding, the appellate court cannot review whether the trial court correctly interpreted the prior case because the record of the prior case is not before the appellate court. See D BImmobilization, 122 Ohio App.3d at 53, citing Deli Table, Inc. v. GreatLakes Mall (Dec. 31, 1996), Lake App. No. 95-L-012, at 13; Phillips v.Rayburn (1996), 113 Ohio App.3d 374, 379, 680 N.E.2d 1279.
 {¶ 61} Here, the court considered the pleadings and evidence in the underlying case. The trial court did not err by considering this evidence.
 {¶ 62} The Pattons nevertheless assert that we should follow the contrary principle stated in Pisanick-Miller v. RoulettePontiac-Cadillac GMC, Inc. (1991), 62 Ohio App.3d 757, 577 N.E.2d 446. In Pisanick-Miller, the court held that a trial court must decide a R.C.2323.51 motion for attorney fees based solely upon the evidence presented at the hearing and not upon evidentiary materials submitted with the motion or otherwise. In Pisanick-Miller, the trial court held an "abbreviated hearing" regarding the appellant's motion for attorney fees. At the hearing, appellant's counsel presented testimony concerning the number of hours he spent on the case. The appellee's counsel did not present any evidence. After the hearing, the appellee's counsel submitted an affidavit to the court explaining the basis of the action. The appellant filed a motion to strike the affidavit, which the court denied. The trial court also denied the appellant's motion for attorney fees.
 {¶ 63} On appeal, the appellant argued that the court erred by failing to strike the affidavit submitted after the hearing. The court of appeals agreed, stating:
 "Appellant's motion was brought, in part, under R.C. 2323.51, which provides for the payment of reasonable attorney fees to any party adversely affected by frivolous conduct in a civil action. R.C. 2323.51(B)(2)(c) states that upon the filing of a motion for fees, the trial court must conduct a hearing, at which the parties and counsel must be given the opportunity to present any evidence relevant to the issues raised. That section also provides that the trial court must then determine whether frivolous conduct has occurred and whether the moving party has been adversely affected.
 In interpreting this provision, at least one appellate district has held that a hearing on a motion for attorney fees is not mandatory in all situations. However, the use of the word `must' in the statute implies that the holding of the hearing is not discretionary. As a result, this court concludes that a motion for attorney fees under R.C. 2323.51 must be decided solely upon the evidence presented at the hearing, not upon evidentiary materials submitted with the motion or otherwise.
 In the trial context, a party generally does not have the right to reopen his case and submit further evidence after he has rested; however, a court can, within its discretion, allow a party to do so when the circumstances warrant such relief. In most instances, courts have allowed the introduction of further evidence when it had recently been discovered or omitted by mistake.
 Although the decision to allow the introduction of further evidence is within the trial court's discretion, it is clear that once a case has been reopened, the opposing party must be given an opportunity to also submit additional evidence. This holding is obviously based upon due process considerations.
 While a hearing on a motion for fees under R.C. 2323.51 is not the same as a trial on the merits, the same principle is clearly applicable. In this case, there is no indication in the record that the statements contained in counsel's affidavit pertained to any newly discovered evidence. Counsel was present at the hearing and easily could have introduced his evidence at that time or following a continuance. As a result of counsel's actions, appellant was denied the opportunity to cross-examine counsel as to the merits of his statements."
Id. at 760-61 (citations omitted).
 {¶ 64} The facts in Pisanick-Miller differ from those in the case at bar, and we believe that its holding must be read in light of its facts. In Pisanick-Miller, the parties filed evidence after the court concluded the hearing. None of the evidence was part of the file in the underlying case. In the case at bar, by contrast, the Arnolds requested the trial court, at the hearing, to consider the pleadings in the underlying case. Thus, we do not find Pisanick-Miller controlling.
 {¶ 65} To the extent Pisanick-Miller holds that a court may never consider evidence outside the attorney fee hearing, we disagree with it. See, also, Jackson v. Bellomy, Franklin App. No. 01AP-1397 (disagreeing with Pisanick-Miller and stating that "to require the [defendants] to reproduce evidence of documents and proceedings already in the record would be an unnecessarily `pointless gesture'"). We agree with the reasoning set forth in Murrell v. Williamsburg Local School Dist.
(1993), 92 Ohio App.3d 92, 96, 634 N.E.2d 263:
 "Appellants rely upon Pisanick-Miller v. Roulette Pontiac-Cadiallac GMC, Inc. (1991), 62 Ohio App.3d 757, 761, 577 N.E.2d 446, 449, in which the court stated, `a motion for attorney's fees under R.C. 2323.51 must be decided solely upon the evidence presented at the hearing, not the evidentiary material submitted with the motion or otherwise.' In the present case, the trial court did hold a hearing at which arguments were presented. The parties had an opportunity to present evidence, but they did not. Appellants did not object in any way to this procedure or attempt to present their own evidence. Appellants never even raised the issue in the trial court, and we concluded that they waived it."
 {¶ 66} Similarly, in the case at bar, the trial court held a hearing regarding the attorney fee motions. The Pattons never objected to the procedure the court used. Thus, they cannot now complain that the court somehow erred by considering evidence from the court file.
 {¶ 67} Accordingly, we overrule the Pattons' first assignment of error.
 B
Good Faith Argument for an Extension or Modification of Existing Law
 {¶ 68} The Pattons' second and third assignments of error raise the similar issue of whether they raised good faith arguments for the extension of modification of existing law. Therefore, we consider them together.
 {¶ 69} In their second assignment of error, the Pattons claim that the trial court erred by finding that they did not advance a good faith argument for an extension or modification of existing law or a good faith argument for the establishment of new law. The Pattons assert that to dispose of this assignment of error, we first must address two preliminary issues: (1) what standard of review applies; and (2) whether the amended version of R.C. 2323.51, effective April 7, 2005, applies. They contend that we should review de novo the court's decision that they did not advance a good faith argument for an extension or modification of existing law. They further argue that the court should have used the version of R.C. 2323.51 that became effective April 7, 2005, the date of the final hearing on attorney fees. The amended version of the statute added the following to the definition of frivolous conduct: conduct that "cannot be supported by a good faith argument for the establishment of new law."
 {¶ 70} The Arnolds argue that this court applies a de novo standard of review to the question of whether conduct is frivolous, but that "[t]he review, while de novo, applies an abuse of discretion standard[;] that is, did the trial court act unreasonably, arbitrarily or unconscionably."
 {¶ 71} The Arnolds and Ditmyer disagree with the Pattons' claim that the court should have applied the version of the statute that became effective on the date of the final hearing. They assert that the statute in effect at the time they filed the motions for attorney fees governs.
 {¶ 72} The Arnolds assert that the court did not abuse its discretion by finding that the Pattons did not have a good faith argument for an extension, modification, or reversal of existing law. They assert that the court properly found that the Pattons' claim that a permanent improvement to realty, i.e., Ditmyer's house, should be legally separated from the real estate the Arnolds conveyed to them was not warranted under existing law and was not supported by a good faith argument as to an extension, modification, or reversal of existing law. Ditmyer likewise asserts that the trial court did not err by finding that the Pattons failed to raise a good faith argument as to an extension or modification of existing law.
 1 Standard of Review {¶ 73} In Fenley v. Bowman (Apr. 17, 2000), Athens App. No. 99CA51, we set forth the standard of review that governs a trial court's decision to award attorney fees under R.C. 2323.51:
 "A decision to impose sanctions pursuant to R.C. 2323.51 rests within the sound discretion of the trial court and will not be reversed upon appeal absent an abuse of that discretion. Riley v. Langer (1994), 95 Ohio App.3d 151, 159, 642 N.E.2d 1; Blackburn v. Lauder (Nov. 12, 1996), Lawrence App. No. 96CA05, unreported. An abuse of discretion connotes more than a mere error of law or judgment; rather, it implies an unreasonable, arbitrary, or unconscionable attitude on the part of the trial court. Franklin Cty. Sheriff's Dept. v. State Emp. Relations Bd. (1992), 63 Ohio St.3d 498, 506, 589 N.E.2d 24; Wilmington Steel Products, Inc. v. Clev. Elec. Illum. Co. (1991), 60 Ohio St.3d 120, 122, 573 N.E.2d 622. However, whether there are good legal grounds to support a complaint when underlying facts are not in dispute is a question of law, which we review de novo. Burns v. Henne (1996), 115 Ohio App.3d 297, 685 N.E.2d 294; Wiltberger v. Davis (1996), 110 Ohio App.3d 46, 51, 673 N.E.2d 628; Tomb Assoc. Inc. v. Wagner (1992), 82 Ohio App.3d 363, 366, 612 N.E.2d 468; Passmore v. Greene Cty. Bd. of Elections (1991), 74 Ohio App.3d 707, 600 N.E.2d 309."
 {¶ 74} Thus, we apply a mixed standard of review. If the facts are not in dispute, we first determine, without deference to the court's decision, whether the trial court properly found that the party's argument was unwarranted. See Riston v. Butler, 149 Ohio App.3d 390,2002-Ohio-2308, 777 N.E.2d 857, at ¶ 21. "The question of whether a pleading or argument is warranted under existing law or can be supported by a good faith argument for an extension, modification, or reversal of existing law is a question of law, peculiarly within the competence of an appellate court." Passmore v. Green Cty Bd. Of Elections (1991),74 Ohio App.3d 707, 712, 600 N.E.2d 309. Then, in light of that finding, we evaluate whether the court abused its discretion by awarding attorney fees.
 2 Applicable Version of the Statute {¶ 75} We next must decide which version of the statue applies. The Pattons claim that the court should have applied the statute that came into effect on the date of the final attorney fee hearing. We disagree.
 {¶ 76} The April 7, 2005 version of R.C. 2323.51(A)(2)(a) defines frivolous conduct as conduct that: (ii) * * * is not warranted under existing law, cannot be supported by a good faith argument for an extension, modification, or reversal of existing law, or cannot be supported by a good faith argument for the establishment of new law." The amendment, 2004 S 80, added ", or cannot be supported by a good faith argument for the establishment of new law."
 {¶ 77} In Sturm v. Sturm (1992), 63 Ohio St.3d 671, 672-673,590 N.E.2d 1214, the court rejected the argument that a prior version of R.C. 2323.51 was retroactive. The court stated:
 "R.C. 2323.51, the `frivolous conduct statute,' was enacted as part of Am. Sub. H.B. No. 327, which became effective October 20, 1987. Section 3 of the Act renders the statute prospective in application, and reads as follows:
 The provisions of this act shall apply only to civil actions that are commenced on and after the effective date of this act and that are based upon claims for relief that arise on or after that date, and only to conduct that occurs on or after that date.'
 The use of the word `and' in this section indicates that, in order for R.C. 2323.51 to apply, the civil action, the underlying claims which gave rise to the civil action, and the allegedly frivolous conduct must all occur on or after October 20, 1987, the effective date of the statute. The provision constitutes an unequivocal expression by the General Assembly that this statute, in accordance with R.C. 1.48, is intended to be prospective, not retrospective, in scope. See Kiser v. Coleman (1986), 28 Ohio St.3d 259, 262, 28 OBR 337, 339, 503 N.E.2d 753, 756
(where there is no clear indication of retroactive application, statute may only apply to cases arising subsequent to its enactment). R.C. 1.48 provides that `[a] statute is presumed to be prospective in its operation unless expressly made retrospective.'"
(Footnote omitted).
 {¶ 78} In the case at bar, the legislature has not indicated an intent for the amended version of R.C. 2323.51 to be retrospective. Thus, under R.C. 1.48, we must presume that the statute is prospective. Therefore, we apply the version of the statute that existed just prior to the April 7, 2005 amendment.
 3 Frivolous Conduct {¶ 79} A motion for sanctions under R.C. 2323.51 requires a court to determine whether the challenged conduct constitutes frivolous conduct, and, if so, whether any party has been adversely affected by the frivolous conduct. See R.C. 2323.51(B)(2)(c). If the court finds that frivolous conduct has adversely affected a party, the court may award court costs, reasonable attorney fees, and other reasonable expenses incurred in connection with the civil action. See R.C. 2323.51(B)(1).
 {¶ 80} R.C. 2323.51 defines two types of frivolous conduct: (1) conduct that serves only to harass or maliciously injure the opposing party in a civil action; and (2) conduct that is unwarranted under existing law and for which there is no "good faith argument for an extension, modification, or reversal of existing law." R.C.2323.51(A)(2)(a)(i) and (ii).
 {¶ 81} "`Whether a claim is warranted under existing law is an objective consideration. The test * * * is whether no reasonable lawyer would have brought the action in light of the existing law. In other words, a claim is frivolous if it is absolutely clear under the existing law that no reasonable lawyer could argue the claim.'" Riston, supra, at ¶ 30, quoting Hickman v. Murray (Mar. 22, 1996), Montgomery App. No. 15030 (citations omitted). Courts should apply R.C. 2323.51 "`carefully so that legitimate claims are not chilled. A party is not frivolous merely because a claim is not well-grounded in fact. Furthermore, the statute was not intended to punish mere misjudgment or tactical error. Instead the statute was designed to chill egregious, overzealous, unjustifiable, and frivolous action." Hickman v. Murray (Mar. 22, 1996), Montgomery App. No. 15030 (citations omitted), quoted inRiston, at ¶ 29.
 {¶ 82} Here, the trial court properly determined that the conduct of the Pattons and their counsel in filing the complaint was frivolous. When they filed the complaint, the Pattons knew that the deed had mistakenly conveyed Lot 707, and that when they offered to purchase the Arnolds' house, they had no intention to purchase Ditmyer's home, which happened to sit upon Lot 707. The Pattons filed the lawsuit merely to force some sort of settlement when they had no legitimate claim to Ditmyer's land. Their conduct in arguing that the court should award them Ditmyer's land but not her house is untenable and overzealous. To demand Ditmyer's ejection from Lot 707 and $100,000 from the Arnolds and Ditmyer when an obvious error occurred is egregious conduct.
 {¶ 83} The Pattons' assertion that they had a valid argument that Ditmyer did not adversely possess the land is meritless. The Pattons contend that because Ditmyer did not pay real estate taxes on Lot 707, she cannot establish adverse possession. Payment of real estate taxes is not an element of adverse possession in Ohio. The Pattons would thus assert that even though Ditmyer has been in open, notorious, continuous, exclusive, and adverse use of the property for at least twenty-one years, her failure to pay property taxes prohibits her from claiming adverse possession. We do not find this to be a reasonable argument for the extension or modification of existing law.
 {¶ 84} Regarding their claim against the Arnolds, the Pattons filed a complaint against the Arnolds for breach of the general deed warranty, instead of requesting the court to reform the deed, when they knew that a mistake had occurred. The Pattons' complaint against the Arnolds is unwarranted because they knew that the Arnolds never intended to sell Ditmyer's home and because the Pattons never intended to purchase Ditmyer's home. The instant case is a classic example of a mutual mistake that warrants reforming a deed. For the Pattons to assert anything else is unjustifiable and a waste of judicial resources.
 {¶ 85} In their third assignment of error, the Pattons argue that the trial court erred by granting the Arnolds attorney fees when the deed purported to convey Lot 707 and contained express warranties. They contend that they presented "a perfectly valid legal argument and theory." We do not believe that the Pattons claim of ownership to Lot 707 is a valid legal argument.
 {¶ 86} They admitted that they never intended to purchase Ditmyer's home. They admit that the Arnolds mistakenly thought they were conveying Lot 707. While they validly argue that something needed to occur to correct the title to Lot 707, their complaint alleging that the Arnolds breached the deed warranties, seeking Ditmyer's ejection from the property, and requesting $100,000 in damages is not reasonable. Instead, they could have requested that the court reform the deed to reflect what the parties thought was being conveyed. As we stated above, the Pattons knew when they filed their complaint that the deed mistakenly conveyed Lot 707. As the Pattons themselves admit, they never intended to purchase Ditmyer's home.
 {¶ 87} Accordingly, we overrule the Pattons' second and third assignments of error.
 C Fees Were Incurred as a Result of the Frivolous Conduct {¶ 88} In their fourth assignment of error, the Pattons assert that the trial court erred by awarding attorney fees when appellees failed to show what part of the fees directly and proximately resulted from the alleged frivolous conduct. They assert that the court failed to enter a factual finding that appellees were adversely affected and failed to specify what part of the attorney fees were caused by the alleged frivolous conduct.
 {¶ 89} R.C. 2323.51(B)(3) requires the party seeking attorney fees to show that the party has been adversely affected by the frivolous conduct and that the attorney fees were "reasonably incurred * * * and necessitated by the frivolous conduct." See Fenley v. Bowman, supra.
 {¶ 90} Here, the Pattons stipulated as to the reasonableness of the fees. Counsel stated that he stipulated to "the reasonableness of the time required to defend and bring the claims" of the Arnolds and Ditmyer. Counsel stated that he stipulated to the reasonableness but "not to the frivolousness." Because counsel stipulated to the reasonableness of the fees and stated that he only contested the frivolousness, the Arnolds and Ditmyer were entitled to believe that the Pattons did not dispute that the fees were incurred as a result of the alleged frivolous conduct or that they were adversely affected by the conduct. See Whitehall ex rel. Fennessy v. Bambi Motel, Inc. (1998),131 Ohio App.3d 734, 742, 723 N.E.2d 633 ("A stipulation, once entered into, filed and accepted by the court, is binding upon the parties and is a fact deemed adjudicated for purposes of determining the remaining issues in the case."). As we stated in Nezhad v. Kilgore (Dec. 18, 1998), Lawrence App. No. 98CA3:
 "Parties may choose to stipulate facts in lieu of presenting evidence. In Peters Motors, Inc. v. Rodgers (1954), 161 Ohio St. 480, 120 N.E.2d 80, paragraph two of the syllabus, the court noted that a stipulation of fact renders proof unnecessary. In Markert v. Bosley (C.P.1965), 2 Ohio Misc. 109, 113, 207 N.E.2d 414, 416, the court explained the effect of a stipulation as follows:
 'It is elementary that when an adverse party is willing to stipulate to the truth of a certain allegation, the party having the burden of proving that allegation is relieved from proving it. In other words, the stipulation renders proof unnecessary. See 9 Wigmore, Evidence, Section 2588, 2590, 2591 (3d ed. 1940), stating, in Section 2588, that the stipulation is "a substitute for evidence," and "does away with the need for evidence." See, also, 83 C.J.S., Stipulations, Section 10 f.(7) and (12); Peters Motors, Inc. v. Rodgers (1954), 161 Ohio St. 480, 120 N.E.2d 80 (stipulations of ownership of automobile.)' See, also, In Re Fetzer (1997), 118 Ohio App.3d 156, 164, 692 N.E.2d 219, 224; Turner v. Turner (Oct. 18, 1995), Clark App. No. 94 CA 57, unreported."
Therefore, the Pattons' argument that the Arnolds and Ditmyer failed to establish that they were adversely affected by the frivolous conduct and that they incurred the fees as a result of the conduct is without merit.
 {¶ 91} We further disagree with the Pattons' assertion that the court's failure to enter factual findings requires us to reverse the court's judgment. We first observe that in its judgment entry awarding Ditmyer attorney fees, the trial court found that Ditmyer had been adversely affected by the conduct of the Pattons and their counsel. However, the court did not enter a similar finding when awarding the Arnolds attorney fees. Nevertheless, the trial court obviously was aware of the need for such a finding and its failure to explicitly state this finding in its judgment entry does not affect the validity of its decision. See, generally, Carl v. Carl (July 22, 1999), Ross App. No. 98CA2442 (stating that in the absence of evidence to the contrary, a reviewing court will presume that the trial court considered the appropriate statutory factors); see, also, Minoughan v. Minoughan (June 23, 2000), Montgomery App. No. 18089. Additionally, nothing in R.C.2323.51 requires the court to detail its findings in writing. Thus, the court did not err by failing to enter a written finding that the Arnolds had been adversely affected by the conduct of the Pattons and their counsel. For these same reasons, the court did not err by failing to enter a written finding that the attorney fees were incurred as a result of the frivolous conduct. Instead, we may presume that the court considered the appropriate statutory factors.
 {¶ 92} Accordingly, we overrule the Pattons' fourth assignment of error.
 IV {¶ 93} The Arnolds and Ditmyer have filed motions seeking attorney fees under App. R. 23. The Pattons filed a motion to strike Ditmyer's motion. For the following reasons, we grant, in part, the Arnolds' and Ditmyer's motions for attorney fees and overrule the Pattons' motion to strike.
 A Motion to Strike {¶ 94} The Pattons claim that Ditmyer filed her motion for attorney fees out of rule. The Pattons assert that Local Rule 16 does not permit the additional "brief." The Pattons' argument is meritless.
 {¶ 95} Local Rule 16 addresses "original actions." Nothing in that rule governs a party's request for attorney fees.
 {¶ 96} App.R. 15 allows a party to file a motion in the appellate court and requires a request for attorney fees to be made by written motion. See Barbato v. Mercy Med. Ctr., Stark App. No. 2005CA44,2005-Ohio-5219, at ¶ 62; Richards v. Beechmont Volvo (1998),127 Ohio App.3d 188, 192, 711 N.E.2d 1088.
 {¶ 97} Here, Ditmyer filed a written motion requesting attorney fees pursuant to App.R. 15 and App.R. 23. Nothing in our local rules prohibits the motion.
 {¶ 98} Therefore, the Pattons' motion to strike has no merit and we overrule it.
 B Motion for Attorney Fees 1 App.R. 23 Standard {¶ 99} App.R. 23 provides: "If a court of appeals shall determine that an appeal is frivolous, it may require the appellant to pay reasonable expenses of the appellee including attorney fees and costs." A frivolous appeal is an appeal that presents no reasonable question for review. SeeCusick v. North Coast Family Found. (July 2, 1998), Cuyahoga App. No. 73458, citing Danis Montco Landfill Co. v. Jefferson Twp. ZoningComm. (1993), 85 Ohio App.3d 494, 620 N.E.2d 140; see, also,Rak-Ree Enterprises, Inc. v. Timmons (Sept. 29, 1997), Pickaway App. No. 97CA5. The decision of whether to award attorney fees for frivolous conduct rests within the sound discretion of this court. SeeCominsky v. Malner, Lake App. No. 2002-L-103, 2004-Ohio-2202.
 2 Ditmyer's Motion {¶ 100} Ditmyer contends that she is entitled to attorney fees in Case Number 05CA12 for defending the Pattons' third assignment of error. She asserts that the Pattons' argument regarding adverse possession is frivolous. Ditmyer contends that to oppose her adverse possession claim when the Pattons admitted that Ditmyer's home has been located on Lot 707 since at least 1966 is frivolous.
 {¶ 101} We agree that the Pattons' argument regarding adverse possession is frivolous. The Pattons cannot legitimately claim that they own Lot 707 when Ditmyer's house has sat upon the lot for at least twenty-one years. Furthermore, their argument that they own the land but not the house is ludicrous. Thus, Ditmyer is entitled to attorney fees for defending the Pattons' third assignment of error in Case Number 05CA12.
 {¶ 102} Ditmyer argues that she is entitled to attorney fees in Case Number 05CA22 regarding the Pattons' first assignment of error. She claims that the Pattons' argument that the court erred by taking judicial notice of the pleadings in the case file is frivolous. She asserts that the Pattons' argument is contrary to this court's decision in Diversified Mortgage, supra, where we recognized that a trial court could take judicial notice of the proceedings in the underlying case.
 {¶ 103} Because the Pattons argued that this court should follow contrary law from another Ohio appellate district, seePisanick-Miller, supra, we find that this argument is not completely unreasonable. Thus, we decline to award attorney fees for defending this assignment of error.
 {¶ 104} Ditmyer asserts that the Pattons' second assignment of error is frivolous because there is no authority in Ohio that the payment of real estate taxes is a prerequisite to establishing adverse possession. As we stated in our discussion, supra, the Pattons' argument regarding payment of real estate taxes is not a reasonable argument for the extension or modification of existing law. It ignores long-standing principles of adverse possession and would deny a claimant possession of property simply because the claimant did not pay real estate taxes, when all other elements of adverse possession are unequivocally shown. Thus, Ditmyer is entitled to attorney fees for defending the Pattons' third assignment of error in Case Number 05CA22.
 {¶ 105} Ditmyer contends that the Pattons' fourth assignment of error is frivolous because they stipulated to the reasonableness of the fees and cannot now complain that Ditmyer failed to show that the fees were incurred as a direct result of the alleged frivolous conduct.
 {¶ 106} We agree that it is unreasonable for the Pattons to dispute an issue to which they stipulated. Thus, Ditmyer is entitled to attorney fees for defending the Pattons' fourth assignment of error in Case Number 05CA22.
 3 The Arnolds' Motion {¶ 107} The Arnolds assert that the Pattons' first assignment of error in Case Number 05CA12 is frivolous because it disregards the mutual mistake doctrine and the law governing deed reformation. The Arnolds note that the Pattons admit that the deed mistakenly conveyed Lot 707 yet still argued against reformation.
 {¶ 108} The Arnolds claim that the Pattons' second assignment of error is frivolous because they ignore the mutual mistake doctrine.
 {¶ 109} We agree with the Arnolds that the Pattons' first and second assignments of error are frivolous. Both disregard the obvious mistake that occurred in the deed conveyance. For the Pattons to claim that they are entitled to some redress for property that they admit they never intended to purchase and for which they never bargained is completely unreasonable. Thus, the Arnolds are entitled to attorney fees for defending the Pattons' first and second assignments of error in Case Number 05CA12.
 {¶ 110} The Arnolds assert the Pattons' appeal in Case Number 05CA21 is frivolous. They rely upon the arguments that Ditmyer presents regarding the Pattons' first, second, and fourth assignments of error. The Arnolds further contend that the Pattons' argument that a good faith argument exists for an extension or modification of existing law is frivolous because their argument would require this court to disregard long-standing property law principles that a fixture, here Ditmyer's house, cannot be separated from the land.
 {¶ 111} For the reasons that we find Ditmyer entitled to attorney fees for defending the Pattons' second and fourth assignments of error, we also find the Arnolds entitled to attorney fees. We deny their request as it pertains to the Pattons' first assignment of error for the reasons stated above.
 {¶ 112} The Arnolds argue that the Pattons' third assignment of error is frivolous because the warranties "do not control when a mutual mistake defeats" the parties' original intent.
 {¶ 113} We agree that the Pattons' third assignment of error is frivolous. As we stated in our discussion of the Pattons' third assignment of error, the Pattons admitted that a mistake occurred yet somehow still argue that they are entitled to the property. This is unreasonable. Thus, the Arnolds are entitled to attorney fees for defending this assignment of error.
 V CONCLUSION {¶ 114} In conclusion, we overrule all of the Pattons' assignments of error in the three consolidated cases. We affirm the court's decisions awarding the Arnolds and Ditmyer summary judgments. We also affirm its decisions awarding the Arnolds and Ditmyer attorney fees.
 {¶ 115} We overrule the Pattons' motion to strike Ditmyer's motion for attorney fees. We grant the Arnolds' and Ditmyer's App.R. 23 motions for attorney fees except as it pertains to the first assignment of error in Case Numbers 05CA21 and 05CA22.
 {¶ 116} Therefore, we award the Arnolds and Ditmyer their reasonable attorney fees incurred in this appeal, as outlined above. This court will conduct a future hearing to determine the appropriate amount of said fees.
JUDGMENT AFFIRMED.
 JUDGMENT ENTRY
It is ordered that the JUDGMENT BE AFFIRMED and that Appellee shall recover from Appellant costs herein taxed.
The Court finds there were not reasonable grounds for this appeal (except for the first assignment of error in cases 05CA21 and 05CA22).
It is ordered that a special mandate issue out of this Court directing the Athens County Court of Common Pleas to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.
Harsha, P.J., Abele, J. and Kline, J.: Concur in Judgment and Opinion.
For the Court
[1] R.C. 5302.04 provides:
 In a conveyance of real estate or any interest therein, all rights, easements, privileges, and appurtenances belonging to the granted estate shall be included in the conveyance, unless the contrary is stated in the deed, and it is unnecessary to enumerate or mention them either generally or specifically.
 R.C. 5302.06 states that in a conveyance of real estate, or any interest therein, the words "general warranty covenants" have the full force, meaning, and effect of the following words:
 The grantor covenants with the grantee, his heirs, assigns, and successors, that he is lawfully seized in fee simple of the granted premises; that they are free from all encumbrances; that he has good right to sell and convey the same, and that he does warrant and will defend the same to the grantee and his heirs, assigns, and successors, forever, against the lawful claims and demands of all persons.