BURNS et al., Appellants,

v.

HENNE et al., Appellees.

[Cite as *Burns v. Henne* (1996), 115 Ohio App.3d 297.]

Court of Appeals of Ohio,
Second District, Miami County.

No. 95–CA–53.

Decided Oct. 18, 1996.

*J. Richard Gaier*, for appellants.

*Dale G. Davis*, for appellees.

BROGAN, Presiding Judge.

Appellant Perry J. Pelaez appeals from the Miami County Common Pleas Court's judgment imposing sanctions against him for willfully violating Civ.R. 11.

Pelaez advances four assignments of error. First, he contends that the trial court abused its discretion by imposing Civ.R. 11 sanctions absent any evidence of a rule violation. Next, Pelaez claims that the trial court's imposition of Civ.R. 11 sanctions was against the manifest weight of the evidence. Third, he asserts that the trial court lacked jurisdiction to consider appellee Bill McVety Realty's motion for sanctions. Finally, Pelaez contends that the trial court erred by including as sanctions the attorney fees incurred by Bill McVety Realty as a result of its Civ.R. 11 motion.

Pelaez's appeal stems from his representation of John and Melissa Burns in a lawsuit filed against William and Terry Henne, Bill McVety Realty, and Heritage Realty. The Burns filed their complaint after purchasing a home from the Hennes and discovering problems with the home's furnace. The Burnses' complaint alleged fraud based upon the defendants' false representations that a furnace inspection had been performed and the concealment of their knowledge concerning defects in the home's heating system.

Specifically, the Burnses' complaint, which Pelaez signed and filed with the trial court, included the following allegations:

"1. On or about September 18, 1992, Plaintiffs, John and Melissa Burns, Purchaser herein, entered into and executed with Defendants, William Henne and Terri Henne, Sellers herein, a contract to purchase a parcel of real property located at 919 West Greene Street, Piqua, Ohio * * *.

"2. Defendant Bill McVety Realty, Inc. was the listing agent. Defendant Heritage Realty, Inc. was a sub-agent of said listing agent in reference to the sale of said premises.

"3. Under the terms of the contract, Purchaser requested that an inspection of the heating and furnace be performed.

"4. Defendant Bill McVety Realty, Inc., and Defendant Heritage Realty undertook the obligation to ensure that the inspection was performed.

"5. In order to induce Purchaser to perform under the contract, Defendants falsely and fraudulently represented to Purchaser that the heating and furnace inspection had been performed and that there were no problems therein.

"6. Plaintiffs, relying on the aforementioned representations, were induced to perform under the contract and to pay Seller the purchase price therein.

"7. At the time Defendants made the representations and at the time Defendants received Plaintiff's purchase money, Defendants well knew that the representations made to Plaintiff concerning the heating and furnace inspections were false and such representations were made expressly to induce Plaintiffs to perform under the contract.

"8. At the time of execution of the contract, the condition of the premises was such that it contained a defective and non-functional heating [system] and furnace.

"9. Defendants fraudulently concealed from Plaintiffs said facts, knowing that if they had disclosed the truth of the matter to Plaintiffs, Plaintiffs would not have purchased the property.

"10. Plaintiff has incurred expenses in the amount of $155.04 in order to repair the improper flue.

"11. In order to cure such defective furnace, Plaintiff will incur a cost in excess of $3,060.00. * * * "

In response to the Burnses' complaint, the defendants each filed an answer denying the allegations of fraud. In particular, appellee McVety Realty denied the Burnses' claim that Heritage Realty acted as its agent. The appellee also denied that the Burnses had asked McVety Realty for a heating inspection to be performed. Additionally, the appellee denied undertaking any obligation to have an inspection performed. Finally, McVety Realty denied falsely and fraudulently representing that an inspection had been performed or making any representation about the results of such an inspection.

The record includes subsequent affidavits from the Hennes averring that Millard Carnes, a heating and furnace inspector, arrived at their home on September 28, 1992, to examine their heating system. Bill Schultz of Heritage Realty allegedly arranged for the inspection at the Burnses' request. After examining the furnace and heating system, Carnes informed Mrs. Henne on September 28, 1992, about defects in the heating system.

In their affidavits, Mr. and Mrs. Henne each averred that Carnes told them he would report his findings to Heritage Realty. Furthermore, the Hennes averred that they never received a copy of a furnace inspection report from Carnes or anyone else. Consequently, the Hennes denied intentionally concealing problems with the furnace. Instead, they presumed that Carnes made a report available to Heritage Realty and the Burnses. In reality, however, Carnes never completed an inspection report for the Hennes' home.

In another affidavit, Jean Bates, a real estate agent with Bill McVety realty, averred that she acted for her agency as the listing agent for the Hennes' home. She denied being asked by the Burnses to assist with a home inspection or undertaking such an obligation herself. Bates also averred that she received no written report from Carnes, never spoke with Carnes, never spoke with the Burnses concerning the home's heating system, and lacked knowledge about

problems with the furnace that should have been disclosed to the Burnses. Finally, Bates averred that she received a fax from Bill Schultz of Heritage Relators on October 19, 1992. The fax transmission included a furnace inspection report that Bates mistakenly assumed was for the Hennes' home. Bates averred, however, that she did not learn until several weeks after the subsequent closing that the report concerned an unrelated property in Troy, Ohio.

Along with Bates's affidavit, McVety Realty filed a motion for summary judgment on September 21, 1993. The Hennes also filed a motion for summary judgment against the Burnses on September 30, 1993. Subsequently, on November 2, 1993, the Burnses filed a notice of voluntary dismissal of their complaint with prejudice pursuant to Civ.R. 41. Thereafter, on May 23, 1994, McVety Realty filed a motion seeking Civ.R. 11 sanctions against Pelaez and his law firm, J. Richard Gaier Co., L.P.A., the Burnses' counsel in the dismissed fraud action. The Hennes later filed their own motion for Civ.R. 11 sanctions against Pelaez and his law firm.

In response, Pelaez and his firm filed motions to dismiss McVety Realty's and the Hennes' motions for sanctions. Specifically, Pelaez and his firm argued that the trial court lacked jurisdiction to consider sanctions after the Burnses voluntarily dismissed their fraud action pursuant to Civ.R. 41(A). The trial court rejected Pelaez's argument in an October 5, 1994 journal entry and overruled his motion to dismiss the motions for sanctions. This court then rejected Pelaez's request for a writ of prohibition enjoining the trial court from conducting a hearing on the motions for sanctions. In so doing, we determined that trial courts retain jurisdiction to resolve collateral matters, such as a motion for sanctions pursuant to Civ.R. 11, despite the voluntary dismissal of an underlying action. *State ex rel. J. Richard Gaier Co., L.P.A. v. Kessler* (1994), 97 Ohio App.3d 782, 647 N.E.2d 564.

Following this court's ruling, the trial court held hearings on February 14 and May 15, 1995, concerning the motions for Civ.R. 11 sanctions. After the first day of hearings, the Hennes voluntarily dismissed their motion for sanctions against Pelaez and his law firm. Thereafter, on August 15, 1996, the trial court filed a journal entry granting McVety Realty's motion for sanctions. Specifically, the trial court concluded that "Perry J. Pelaez willfully violated Rule 11 of the Rules of Civil Procedure in that he included allegations in the complaint against Bill McVety Realty which he knew to be false." As a result, the trial court awarded McVety Realty $974.90 as reasonable costs incurred in defending against the Burnses' lawsuit. The trial court then awarded McVety Realty an additional $1,098.50 as reasonable fees and expenses incurred in pursuing its motion for

sanctions. Pelaez subsequently filed a timely notice of appeal on September 11, 1995. He advances four assignments of error.

In his first assignment of error, Pelaez contends that the trial court abused its discretion when it found a willful violation of Civ.R. 11. Similarly, in his second assignment of error, Pelaez claims that the trial court's ruling was contrary to the manifest weight of the evidence. Given that both assignments of error challenge the propriety of the trial court's ruling, we will consider them together.

We begin our analysis with a review of Civ.R. 11. That provision pertains to the signing of pleadings or motions. At the time McVety filed its motion for sanctions, Civ.R. 11 provided in part:

"Every pleading of a party represented by an attorney shall be signed by at least one attorney of record in his individual name * * *. The signature of an attorney constitutes a certificate by him that he has read the pleading; that to the best of his knowledge, information, and belief there is good ground to support it; and that it is not interposed for delay. * * * For a willful violation of this rule an attorney may be subjected to appropriate action."

As both parties properly note, a trial court's ruling on a motion to impose sanctions will not be disturbed absent an abuse of discretion. *State ex rel. Fant v. Sykes* (1987), 29 Ohio St.3d 65, 29 OBR 446, 505 N.E.2d 966. However, a trial court cannot exercise its discretion to impose sanctions unless it first finds a violation of Civ.R. 11. Whether there are good legal grounds to support a complaint when the underlying facts are not in dispute is a question of law for which an appellate court need not defer to the trial court. See, generally, *Passmore v. Greene Cty. Bd. of Elections* (1991), 74 Ohio App.3d 707, 712, 600 N.E.2d 309, 313-314.

Pelaez relies in part upon an incident occurring at the November 20, 1992 closing for the sale of the Hennes' home to demonstrate that his complaint was supported by good grounds and therefore warranted under existing law. In particular, Pelaez stresses that both Bill Schultz of Heritage Realty and Jean Bates of McVety Realty possessed a copy of an incorrect inspection report in their files. As we noted above, the report the real estate agents possessed concerned a home located in Troy, Ohio. Nevertheless, the two agents had included the report in their files on the Hennes' home. This incorrect report's origin is unclear from the record. Apparently, however, prior to the November 20, 1992 closing, a representative of Heritage Realty faxed a copy of the incorrect report to Jean Bates of McVety Realty. Bates later explained in an affidavit that she mistakenly assumed the report pertained to the Hennes' home.

In any event, Bruce Norris, a representative of the Equity Land Title Agency, noticed the absence of any heating and furnace inspection report in his files at the November 20, 1992 closing. In an affidavit, Norris stated that an inspection report was necessary for the closing to occur. Consequently, Norris asked whether either of the real estate agents present possessed an inspection report for the Hennes' home. In response, a representative of either Heritage Realty or McVety Realty produced an inspection report for the unrelated property in Troy, Ohio, and identified it as the report for the Hennes' Piqua, Ohio home. The record contains absolutely no evidence indicating which agent provided the report to Norris. Nevertheless, Norris accepted the report without examining it closely, and the parties consummated the transaction. Later, after the Burnses discovered problems with their furnace, Norris contacted the representatives of Heritage Realty and McVety Realty and sought a proper inspection report for the Hennes' former home. Norris averred in his affidavit, however, that neither real estate agent could produce such a report.

Based largely upon the presence of an improper inspection report in the files of both Heritage Realty and McVety Realty, and the fact that one of the two realtors misrepresented the nature of the report at the closing, Pelaez filed a complaint on behalf of the Burnses alleging fraud by both realty companies. In his view, one or both of the realty companies intentionally "duped" Norris into accepting a "bogus" inspection report in order to close the sale. Thus, he reasons that the complaint properly alleged fraud by both Heritage Realty and McVety Realty.

In its brief to this court, however, McVety Realty contends that the foregoing facts did not provide Pelaez with good grounds to support the specific allegations contained in his complaint. In particular, McVety contests paragraph number four of the complaint, which asserts that both realty companies "undertook the obligation to ensure that the inspection was performed." McVety claims that Pelaez knew this allegation was false when he filed the complaint because Heritage Realty alone had agreed to handle the inspection.

Furthermore, McVety disputes the contention in paragraph five of the complaint that both realty companies "falsely and fraudulently represented to Purchaser that the heating and furnace inspection had been performed and that there were no problems therein." To the contrary, McVety stresses that all Pelaez knew when he filed the complaint was that one of the real estate agents had presented an incorrect inspection report, but he did not know which agent.

After considering the parties' opposing arguments and reviewing the record, however, we believe that Pelaez's complaint was supported by good grounds and

its filing was warranted. The gravamen of Pelaez's complaint was that Heritage Realty and McVety Realty engaged in fraud by producing an irrelevant inspection report and inducing the Burnses to perform under the purchase contract. We agree that Pelaez failed to draft his complaint with precision when he alleged in paragraph number four that both realty companies undertook an obligation to have a proper inspection performed. In reality, the record reveals that Heritage Realty alone undertook that obligation. Nevertheless, this misstatement does not undermine the essence of Pelaez's complaint, *i.e.*, that a representative from one of the realty companies, either acting alone or in concert with the other representative, presented a "bogus" inspection report and "duped" the closing agent.

In our view, sufficient circumstantial evidence of fraud justified Pelaez's filing the complaint against both McVety Realty and Heritage Realty. Without question, the representatives from both realty companies possessed the motive and opportunity to present the irrelevant report. Both realtors had a copy of the "bogus" report in their files. Furthermore, both realtors depended upon the transaction closing to earn their commissions. Absent any evidence indicating which representative supplied the wrong report at the closing, we believe these factors justified Pelaez's decision to serve his complaint upon both real estate companies. Subsequent discovery would have enabled Pelaez to develop the facts more fully and possibly determine which relator gave the closing agent the report. In any event, a trier of fact would not be required to accept the realtors' explanations that the inspection report was accidentally provided the closing officer.

In opposition to this reasoning, McVety Realty argues that Pelaez should have filed the Burnses' lawsuit only against Heritage Realty. McVety Realty contends that if, after conducting discovery, Pelaez had discovered some wrongdoing by McVety Realty, he could have amended his complaint to add McVety Realty as a party. The fundamental problem with this approach, however, is that if Heritage Realty had filed its answer immediately, Pelaez's ability to amend his complaint and add a party would have depended entirely upon the trial court's discretion. Civ.R. 15(A). Thus, to guarantee protection of his clients' interests, Pelaez properly named both real estate companies in the complaint. As we noted above, we find this action particularly justified given the circumstantial evidence indicating potential fraud by one or both of the realtors. Therefore, for the foregoing reasons we find Pelaez's decision not to follow the approach suggested by McVety Realty appropriate under the circumstances. Consequently, we conclude that the trial court erred when it found a willful violation of Civ.R. 11, and we sustain Pelaez's assignment of error.

In his third assignment of error, Pelaez contends that the trial court erred when it overruled his motion to dismiss McVety Realty's motion for sanctions. Specifically, Pelaez claims that the trial court lacked jurisdiction to consider imposing sanctions. In support of his argument, he contends that the trial court lost jurisdiction to award Civ.R. 11 sanctions once the Burnses had voluntarily dismissed their complaint with prejudice.

■ We find this argument meritless. The record reveals that this court previously rejected Pelaez's argument in *State ex rel. J. Richard Gaier Co., L.P.A. v. Kessler* (1994), 97 Ohio App.3d 782, 647 N.E.2d 564. In that ruling, we denied a request by Pelaez's law firm for a writ of prohibition preventing Judge Kessler from holding a hearing on McVety Realty's motion for sanctions. In so doing, we expressly held that "the filing of a voluntary dismissal does not divest the trial court of jurisdiction over a motion for sanctions so long as that motion does not seek to penalize a party for exercising his absolute right to dismiss an action." Accordingly, we overrule Pelaez's third assignment of error.

In his final assignment of error, Pelaez contends the trial court erred when it included as sanctions expenses incurred by McVety Realty as a result of pursuing its Civ.R. 11 motion. Our resolution of Pelaez's first two assignments of error, however, renders this assignment of error moot. Consequently, pursuant to App.R. 12(A)(1)(c) we need not address it.

Having sustained Pelaez's argument that the trial court erred when it found a willful violation of Civ.R. 11, we reverse the judgment of the Miami County Common Pleas Court.

*Judgment reversed.*

FAIN and GRADY, JJ., concur.