[Cite as *Henderson v. Haverfield*, 2022-Ohio-2194.]

# IN THE COURT OF APPEALS OF OHIO

## SEVENTH APPELLATE DISTRICT
## HARRISON COUNTY

DOUGLAS W. HENDERSON,

Plaintiff-Appellant,

v.

MARY E. HAVERFIELD et al.,

Defendants-Appellees.

---

**OPINION AND JUDGMENT ENTRY**
**Case No. 21 HA 0005**

---

Civil Appeal from the
Court of Common Pleas of Harrison County, Ohio
Case No. CVH 2013-0098

**BEFORE:**
Carol Ann Robb, Cheryl L. Waite, David A. D'Apolito, Judges.

---

**JUDGMENT:**
Reversed and Vacated.

---

*Atty. David E. Butz*, *Atty. James M. Williams, Atty. Matthew W. Onest,* Krugliak, Wilkins, Griffiths, & Dougherty Co., L.P.A., 4775 Munson Street NW, P.O. Box 36963, Canton, Ohio 44735 for Plaintiff-Appellant and

*Atty. T. Owen Beetham*, 146 S. Main Street, P.O. Box 128, Cadiz, Ohio 43907 for Defendants-Appellees.

Dated:  June 24, 2022

---

**Robb, J.**

{¶1}   Appellants, Douglas W. Henderson, and his attorneys, David E. Butz, Gregory W. Watts, and Matthew W. Onest, and the law firm of Kruglilak, Wilkins, Griffiths & Dougherty Co. L.P.A., appeal the May 10, 2021 judgment awarding Appellees $22,207.26 attorney's fees and expenses against Henderson and his attorneys, jointly and severally.  For the following reasons, we reverse and vacate the trial court's May 10, 2021 decision.

STATEMENT OF THE CASE

{¶2}   Henderson filed suit in August of 2013 against Appellees, Mary E. Haverfield and Edward N. McDonald, husband and wife.[1]  Henderson asserted seven causes of action, seeking in part to quiet title and for declaratory judgment under R.C. 5301.56, the 1989 Dormant Mineral Act (DMA), against Appellees regarding the mineral rights relative to the property owned by Henderson.  Henderson filed suit to demonstrate that the previously severed mineral rights had merged by operation of law pursuant to the DMA.

{¶3}   Appellees filed a joint answer and counterclaim asking the court to quiet title in favor of Mary E. Haverfield and for declaratory judgment finding that she is the owner of all the interest in the oil, mineral, and gas rights underlying the subject property. Appellees' prayer for relief also generally sought costs and attorney's fees.  Appellees contend that Haverfield's mother transferred the surface estate to Henderson's relatives while reserving the oil, gas, and non-coal minerals underlying the surface estate. Appellees also claim that the reservation was subsequently passed to Appellee, Mary E. Haverfield.  Consequently, they asserted that Appellant Henderson only inherited the surface rights.

---

[1] Henderson also named Hess Ohio Developments, LLC, CNX Gas Company, LLC, and Chesapeake Exploration, LLC as Defendants, but the claims against these parties were eventually dismissed, and none of these Defendants are a party on appeal.

Case No. 21 HA 0005

{¶4} The case was effectively stayed from September of 2014 through September of 2016 when the Ohio Supreme Court agreed to hear certified questions regarding the DMA in *Corban v. Chesapeake Expl., L.L.C.*, 149 Ohio St.3d 512, 2016-Ohio-5796, 76 N.E.3d 1089, and several companion cases.

{¶5} After the Supreme Court's *Corban* decision, Henderson sought leave to file a summary judgment motion, urging the court to allow him to file a motion for summary judgment and claiming new defenses arose via *Corban*, including that the application of *Corban* and the 2006 DMA constitutes an unconstitutional taking.

{¶6} Henderson filed his summary judgment motion January 23, 2017, arguing that the 2006 DMA could not be applied against him without running afoul of the Fifth and Fourteenth Amendments to the U.S. Constitution; seeking declaratory judgment that he was the rightful owner of the mineral rights; and asking the court to enjoin Appellees from continuing to claim ownership over the rights, trespassing, and conveying said rights.

{¶7} Appellees filed a competing summary judgment motion in February of 2017, urging the court to find that *Corban* conclusively determined the parties' rights and asking the court to quiet title and for declaratory judgment in their favor. Appellees likewise claimed Henderson's continued arguments after *Corban* were patently frivolous; not warranted under existing law or a good faith extension of the law; and causing excessive and unnecessary litigations costs. Appellees also generally asked the court to grant them attorney's fees and costs in the conclusion of their motion.

{¶8} Before the court ruled on summary judgment but after the briefing concluded, Henderson moved the court to dismiss the case in its entirety, in May of 2018, based on this Court's decision in *Lower Valley Farm, LLC v. Croskey*, 7th Dist. Mahoning No. 16 HA 0010, 2018-Ohio-814. Appellees opposed the dismissal of their claims; did not oppose the dismissal of Henderson's claims; and asked the court to grant their summary judgment motion. The trial court dismissed Appellant's claims only. The only remaining claims were Appellees' counterclaims against Henderson, which were decided via summary judgment on September 17, 2018.

{¶9} In its summary judgment decision, the trial court determined that Mary V. Haverfield is the owner of all mineral, oil, and gas rights underlying Henderson's surface estate and quieted title in Haverfield's favor. The trial court concluded without analysis

or citation to legal authority that "this matter shall come for hearing on Defendants' prayer for Costs and Attorney's fees * * *." Henderson appealed this September 17, 2018 decision in a prior appeal to this Court before the attorney's fees hearing was held and before the court awarded attorney's fees. We ultimately dismissed his prior appeal in October of 2019.

{¶10} In the meantime, the trial court held the attorney's fees hearing on February 22, 2019 and awarded Appellees $22,207.26, consisting of $15,475 in attorney's fees and $6,732 in expert expenses, via its May 10, 2021 Judgment Entry, against Henderson and his attorneys. Appellants filed the instant appeal and raise two assignments of error.

ASSIGNMENT OF ERROR ONE

{¶11} Appellants' first assignment alleges:

"The trial court erred by awarding attorney's fees to Appellees because the trial court did not have jurisdiction to issue that award because a motion for sanctions was not filed within 30 days of the final judgment."

{¶12} This assignment consists of two arguments. Appellants primarily argue the trial court lacked subject matter jurisdiction to award attorney's fees because Appellees did not file a motion for attorney's fees within 30 days of the trial court's September 17, 2018[2] decision granting summary judgment. And because the trial court lacked jurisdiction, Appellants claim the trial court's May 10, 2021 judgment, ultimately awarding Appellees attorney's fees and expenses pursuant to R.C. 2323.51 and Civ.R. 11, is void.

{¶13} We review a trial court's jurisdiction, a question of law, de novo. *Cirino v. Ohio Bur. of Workers' Comp.*, 153 Ohio St.3d 333, 2018-Ohio-2665, 106 N.E.3d 41, ¶ 17.

{¶14} Subject matter jurisdiction is the court's power to decide an issue and render an enforceable judgment. *State v. Mbodji*, 129 Ohio St.3d 325, 2011-Ohio-2880, 951 N.E.2d 1025, ¶ 10. If a court lacked subject matter jurisdiction to decide an issue and render a judgment, then the judgment is void and has no legal effect. *In re J.J.*, 111 Ohio

---

[2] The trial court issued an October 4, 2018 nunc pro tunc decision adding language describing the real estate. For purposes of our analysis here, we only refer to the September 17, 2018 decision since this is the controlling date for final order analysis when a nunc pro tunc order is issued. *State v. Lester*, 130 Ohio St.3d 303, 2011-Ohio-5204, 958 N.E.2d 142, ¶ 19.

St.3d 205, 2006-Ohio-5484, 855 N.E.2d 851, ¶ 10; VOID, *Black's Law Dictionary* (11th ed. 2019).

{¶15} Appellants correctly point out that Appellees did not file a formal motion for attorney's fees. Moreover, the court's September 17, 2018 decision states that it would be setting a hearing on Appellees' "prayer" for relief.

{¶16} As stated, Appellees counterclaimed and asserted two claims for relief, i.e., declaratory judgment and to quiet title. Appellees requested costs and attorney's fees as a general prayer for relief. Based on the court's reliance on the prayer for relief in its September 17, 2018 decision, Appellants urge us to find that this decision was a final, appealable order because there was no motion pending before it on which to grant attorney's fees. Consequently, Appellants claim the 30 days in R.C. 2323.51 was triggered and the court lost jurisdiction to award attorney's fees after the expiration of 30 days. For the following reasons, we disagree.

{¶17} Here, the trial court awarded attorney's fees and expenses under Civ.R. 11 and R.C. 2323.51 against Henderson and his attorneys in its May 10, 2021 judgment.

{¶18} R.C. 2323.51(B)(1) states in pertinent part:

[A]t any time *not more than thirty days after the entry of final judgment* in a civil action * * *, any party adversely affected by frivolous conduct may file a motion for an award of court costs, reasonable attorney's fees, and other reasonable expenses incurred in connection with the civil action * * *. The court may assess and make an award to any party to the civil action or appeal who was adversely affected by frivolous conduct, as provided in division (B)(4) of this section.

(Emphasis added.)

{¶19} Unlike R.C. 2323.51(B)(1), Civ.R. 11 does not contain an express time limit for filing a motion for sanctions. However, at least one court has inferred a 30-day time limit in Civ.R. 11. *Zunshine v. Cott*, 10th Dist. Franklin No. 07AP-764, 2008-Ohio-2298, ¶ 21; *but see Fast Property Sols., Inc. v. Jurczenko*, 11th Dist. Lake No. 2012-L-015, 2013-Ohio-60, ¶ 69 (rejecting *Zunshine's* 30-day time limit for Civ.R. 11 claims). Regardless of whether there is a time constraint upon pursuing a Civ.R. 11 motion for sanctions, the 30-day limit in R.C. 2323.51(B)(1) was not triggered here when the court

Case No. 21 HA 0005

issued its September 17, 2018 summary judgment decision because it was not a final, appealable order. *See Jones v. McAlamey Pools, Spas & Billiards, Inc.,* 4th Dist. No. 07CA34, 2008- Ohio-1365, ¶ 12.

**{¶20}** A party's inclusion of a general prayer for costs and attorney's fees in a complaint or counterclaim that is not sought pursuant to an identified statute and that the court does not address in an otherwise final judgment will not render the judgment non-final and non-appealable. *PC Surveillance. Net, LLC v. Rika Group, Corp.*, 7th Dist. No. 11 MA 165, 2012-Ohio-4569, 994 N.E.2d 843, ¶ 16, *citing Jones.* In the absence of statutory authority, a general prayer attorney-fee request is deemed implicitly overruled for purposes of a final order analysis because a general request for attorney's fees in a complaint does not state a separate cause of action. *Jones* at ¶ 11-12.

**{¶21}** An exception to this rule is when a trial court raises the attorney fee issue in its judgment and defers its adjudication on attorney's fees. *Id.* at ¶ 10; *accord Ft. Frye Teachers Assn. v. Ft. Frye Local School Dist. Bd. of Edn.*, 87 Ohio App.3d 840, 843, 623 N.E.2d 232 (4th Dist.1993). This is what occurred here.

**{¶22}** The trial court's September 17, 2018 decision raises the issue of attorney's fees and sets a hearing on the issue. We acknowledge this judgment creates confusion as to what "prayer" the court is referencing and consequently whether it was final for appeal purposes based on the court's statement that it was scheduling the hearing on the "prayer" for attorney's fees. Notwithstanding, this September 17, 2018 decision nevertheless makes clear that all claims were not resolved because it also set the attorney-fee issue for a later date. Thus, this decision did not "determine an action and prevent a judgment * * *." *See Natl. City Commercial Capital Corp. v. AAAA at Your Serv., Inc.*, 114 Ohio St.3d 82, 2007-Ohio-2942, ¶ 7 (analyzing final orders). Consequently, it was not a final, appealable order, and the 30-day period to move for attorney's fees in R.C. 2323.51 was not triggered.[3] Thus, Appellants' primary argument in their first assigned error lacks merit and is overruled.

**{¶23}** Alternatively, Appellants claim the trial court lacked the statutory authority to award attorney's fees under either R.C. 2323.51 or Civ.R. 11 since no motion was

---

[3] This conclusion is consistent with this court's judgment in Appellants' prior appeal, 18 HA 0005, from the September 17, 2018 decision that was ultimately dismissed for a lack of final, appealable order.

pending when the court set the case for a hearing on attorney's fees via its September 17, 2018 judgment.

**{¶24}** While Appellees did not file a motion explicitly identified in the caption as one moving for attorney's fees, Appellees did repeatedly assert that Appellants' arguments were frivolous. Appellees first referred to Appellants' arguments as patently frivolous and not warranted under existing law and causing "a needless increase in the cost of litigation" in their February 13, 2017 motion for summary judgment. In the conclusion of their summary judgment motion, Appellees reasserted their request for attorney's fees and expenses, albeit without any reference to Civ.R. 11 or R.C. 2323.51.

**{¶25}** Thereafter, Appellees cited and relied on Civ.R. 11 upon moving to strike Henderson's reply in support of his summary judgment motion. Appellees' March 7, 2017 motion to strike did not, however, request attorney's fees or costs; it only requested that the reply be stricken, and it related not to Appellants' arguments but statements regarding the timeliness of the reply brief.

**{¶26}** As emphasized by Appellants, the trial court granted Appellees' summary judgment via its September 17, 2018 judgment and set the case for a hearing on attorney's fees and costs "on Defendants' prayer for Costs and Attorney's Fees * * *." However, when the trial court held the hearing on attorney's fees on February 22, 2019, the court explained that it set the case for a hearing on attorney's fees and costs in light of Appellees' repeated assertions that Appellants' conduct was frivolous. The court also noted at the hearing it had the authority to sua sponte award attorney's fees under Civ.R. 11 or R.C. 2323.51 in light of Appellees' allegations of frivolousness. Thereafter, Appellees orally moved for attorney's fees during this hearing.

**{¶27}** Regardless of the reason the court set the hearing, R.C. 2323.51(B)(2) authorizes a court to fashion an award "upon the motion of a party" or "on the court's own initiative" if the procedural requirements are satisfied.[4]

**{¶28}** Thus, the court was within its authority to set the matter for a hearing on its own initiative, or by construing Appellees' request in their summary judgment motion as

---

[4] We do not address the trial court's compliance with the procedural aspects of R.C. 2323.51(B)(2)(a)-(c) because Appellants do not raise this as an issue. App.R. 12(A)(1)(b).

one for attorney's fees for frivolous conduct, or both. *Id.* Whatever the reason, the trial court was authorized to hold the attorney's fee hearing because Appellees invoked the language and essence of R.C. 2323.51 and asked for attorney's fees and costs in the conclusion of their summary judgment motion. Moreover, the court was authorized to set and conduct the hearing if a formal motion was not filed. R.C. 2323.51(B)(2). Accordingly, the second aspect of Appellants' first assignment lacks merit as well.

**{¶29}** Appellants' first assignment of error lacks merit in its entirety and is overruled.

ASSIGNMENT OF ERROR TWO

**{¶30}** Appellants' second assignment of error asserts:

"The trial court erred when it awarded sanctions because (1) the Fifth District Court of Appeals already determined that reasonable attorneys would bring these arguments, (2) the trial court had the full substance of the federal constitutional arguments before Appellants filed new summary judgment briefs and approved of Appellants submitting other briefs, (3) the trial court ignored the many federal cases cited within Doug [Henderson's] motion for summary judgment, and (5) the trial court record lacks any evidence proving (or even suggesting) Appellants willfully violated Civ.R. 11."

**{¶31}** Initially we address a portion of Appellants' final sub-argument, which asserts the trial court exceeded its authority upon imposing Civ.R. 11 sanctions on Henderson, a represented party. To the extent this was the basis for the court's decision, Appellees concede error. For the following reasons, we agree.

**{¶32}** The May 10, 2021 judgment assessing attorney's fees and expenses against Appellants, jointly and severally, does not state on which grounds it is based. The trial court referenced both R.C. 2323.51 and Civ.R. 11 in its analysis but did not delineate whether its award was rendered under one or both authorities.

**{¶33}** We generally review sanctions imposed pursuant to Civ.R. 11 under an abuse-of-discretion standard. *State ex rel. Bardwell v. Cuyahoga Cty. Bd. of Commrs.*, 127 Ohio St.3d 202, 2010-Ohio-5073, 937 N.E.2d 1274, ¶ 9. However, the standard of review with respect to purely legal issues, such as the application of a rule of law, is de novo. *N.A.T. Trans., Inc. v. McClain*, 165 Ohio St.3d 250, 2021-Ohio-1374, 178 N.E.3d 454, ¶ 12.

**{¶34}** Civ.R. 11 states in part:

The signature of an attorney or *pro se* party constitutes a certificate by the attorney * * * that the attorney * * * has read the document; that to the best of the attorney's or party's knowledge, information, and belief there is good ground to support it; and that it is not interposed for delay. * * * For a willful violation of this rule, an attorney * * *, upon motion of a party or upon the court's own motion, may be subjected to appropriate action, including an award to the opposing party of expenses and reasonable attorney fees incurred in bringing any motion under this rule.

**{¶35}** As alleged, Civ.R. 11 does not authorize the imposition of sanctions or attorney's fees on a party to the suit *unless* the party is a pro se litigant who signed the pleadings. Civ.R. 11; *see Burrell v. Kassicieh*, 128 Ohio App.3d 226, 231, 714 N.E.2d 442, 1998 WL 325264 (3rd Dist.1998) (applying Civ.R. 11 to litigant during period of pro se representation). Thus, to the extent the trial court's decision awarding Appellees attorney's fees against Henderson, a party and non-lawyer, relies on Civ.R. 11, the decision constitutes an error of law. *Id.* Accordingly, this aspect of Appellants' fifth sub-argument has merit.

**{¶36}** For ease of analysis, we address the second aspect of Appellants' fifth sub-argument and their other arguments under this assigned error collectively. Appellants claim the frivolous conduct finding cannot stand under Civ.R. 11 because there is no evidence showing they willfully violated Civ.R. 11, and Appellants' remaining arguments contend their continued pursuit of their legal theories was not frivolous conduct under either R.C. 2323.51 or Civ.R. 11.

THE TRIAL COURT'S DECISION

**{¶37}** The trial court's May 10, 2021 decision awarding Appellees attorney's fees and expenses finds in part:

The Court finds as follows: Plaintiff's actions from September 21, 2016 to February 13, 2017 were permissible. The Court finds that from the *Corban* decision on September 16, 2016 until this Court's ruling in *Gabriel v. Tweedy* C.P. Harrison County CVH-2013 on February 13, 2017 the

Case No. 21 HA 0005

issues presented by Plaintiffs, though having but a miniscule chance of success were not frivolous.

However, after substantially similar arguments were * * * [d]enied Certiorari on due process and taking arguments by the United States Supreme Court in *Walker v. Shondrick-Nau* ____U.S. ___, 137 S.Ct. 824, 2016-Ohio-5793, and dismissed pursuant to Civ.R. 12(B)(6) in *Miller v. Kenney* C.P. Belmont County 14-CV-178 (January 27, 2017) and in this Court dismissed pursuant to Civ.R. 12(B)(6) [in] *Gabriel v. Tweedy supra[,]* February 13, 2017.

Furthermore, the 7th District Court of Appeals definitively put to bed the arguments put forward by Plaintiffs in *Lower Valley v. Croskey*, 2018-Ohio-814 (7th Dist.) March 6, 2018.

Plaintiff's counsel was well aware of the decisions, at least one of which (*Miller v. Kinney*) was a case they were counsel in.

The litigation brought by Plaintiffs was supported by their expert witness attorney Joshua O'Farrell. However, simply because another lawyer filed analogous arguments to their bitter conclusion is not enough to negate the litigation's frivolity.

The Court finds Defendants' expert Attorney Matthew Warnock more persuasive in his arguments that the continued litigation after *Corban* and denial of cert by the Supreme Court was unwarranted.

The Court finds that after February 13, 2017, Henderson's actions were frivolous and that "no reasonable attorney would have concluded the arguments made by Plaintiff[* * *] had any merit or chance of success" and that they were "not warranted under existing law and after *Corban, Walker,* and *Gabriel supra* could not be supported by a good faith argument for an extension, modification or reveal of existing law, or cannot be supported by a good faith argument for the establishment of a new law * * *.

**{¶38}** The court's decision, as a whole, found Appellants' conduct frivolous because it was no longer warranted under existing law and could no longer be supported

by a good faith argument for an extension, modification, or reversal of existing law as of February 13, 2017.

ATTORNEY'S FEES GENERALLY & STANDARD OF REVIEW

**{¶39}** Ohio follows the American Rule which dictates that each party to a lawsuit generally bears its own costs and attorney's fees. *Krasny-Kaplan Corp. v. Flo-Tork, Inc.,* 66 Ohio St.3d 75, 609 N.E.2d 152 (1993); *State ex rel. Varnau v. Wenninger,* 131 Ohio St.3d 169, 2012-Ohio-224, 962 N.E.2d 790, ¶ 23. Absent express statutory authority or bad faith, an award of attorney's fees is improper. *Id.* Exceptions to the American Rule should be narrowly construed. *Dolan v. Glouster*, 4th Dist. Athens No. 11CA18, 2014-Ohio-2017, ¶ 113; *Columbus Check Cashers, Inc. v. Rodgers*, 10th Dist. Franklin No. 08AP-149, 2008-Ohio-5498, ¶ 13 (statutes in derogation of common law must be strictly construed).

**{¶40}** As stated, the trial court references Civ.R. 11 and R.C. 2323.51 in its May 10, 2021 judgment awarding attorney's fees and expenses against Henderson and his attorneys. It does not state under which authority it bases its award. Thus, we analyze both.

**{¶41}** R.C. 2323.51(A) states in part:

(2) "Frivolous conduct" means either of the following:

(a) Conduct of * * * [a] party to a civil action, * * * or of the * * * other party's counsel of record that satisfies *any* of the following:

(i) It obviously serves merely to harass or maliciously injure another party to the civil action or appeal or is for another improper purpose, including, but not limited to, causing unnecessary delay or a needless increase in the cost of litigation.

(ii) It is not warranted under existing law, cannot be supported by a good faith argument for an extension, modification, or reversal of existing law, or cannot be supported by a good faith argument for the establishment of new law.

(iii) The conduct consists of allegations or other factual contentions that have no evidentiary support or, if specifically so identified, are not likely to have evidentiary support after a reasonable opportunity for further investigation or discovery.

(iv) The conduct consists of denials or factual contentions that are not warranted by the evidence or, if specifically so identified, are not reasonably based on a lack of information or belief.

(Emphasis added.)

**{¶42}** The crux of the trial court's decision was based on its interpretation Appellants' arguments went from reasonable ones to frivolous conduct after certain other courts considered the same arguments and rejected them. It concluded that at this point in time, the arguments were not warranted under existing law and could not be supported by a good faith argument for an extension, modification, or reversal of existing law. Thus, we limit our R.C. 2323.51 review to the corresponding section, R.C. 2323.51(A)(a)(ii).

**{¶43}** Before a court may subject an attorney to Civ.R. 11 sanctions, the lawyer must have willfully violated the rule by filing a pleading that to the best of her knowledge, information, and belief, was not supported by good grounds or was filed for purpose of delay. *Haubeil & Sons Asphalt & Materials, Inc. v. Brewer & Brewer Sons, Inc.*, 57 Ohio App.3d 22, 565 N.E.2d 1278 (4th Dist.1989); *State ex rel. Bardwell v. Cuyahoga Cty. Bd. of Commrs.*, 127 Ohio St.3d 202, 2010-Ohio-5073, 937 N.E.2d 1274, ¶ 8. Civ.R. 11 uses a subjective bad faith standard that requires all violations to be willful. *Id.* Bad faith is not just bad judgment or negligence. *Id.* Bad faith "imports a dishonest purpose or some moral obliquity. It implies conscious doing of wrong. It means a breach of a known duty through some motive of interest or ill will. It partakes of the nature of fraud." (Citations and quotations omitted.) *Id.*

**{¶44}** Unlike Civ.R. 11, frivolous conduct under R.C. 2323.51(A) invokes an objective standard. *State ex rel. DiFranco v. S. Euclid*, 144 Ohio St.3d 571, 2015-Ohio-4915, 45 N.E.3d 987, ¶ 15. A finding of frivolousness requires more than prevailing on the legal merits; it requires egregious and unjustifiable conduct. *Id.* Thus, the applicable test is whether no reasonable lawyer would have argued that claim in light of the existing law. *Id.* Merely winning a legal battle is not enough to invoke R.C. 2323.51 sanctions; this statute must be carefully applied to avoid chilling legitimate claims. *Ohio Edison Co. v. Cubick*, 2020-Ohio-7027, 166 N.E.3d 575, ¶ 21 (7th Dist.)

**{¶45}** "The standard of review employed by an appellate court when reviewing rulings on R.C. 2323.51 motions varies and is contingent upon the basis for the trial

court's decision." *Harris v. Rossi*, 11th Dist. No. 2017-T-0045, 2018-Ohio-4573, 123 N.E.3d 284, ¶ 75. We review purely legal issues, such as if an attorney's conduct is warranted under existing law and cannot be supported by a good faith argument for an extension, modification, or reversal of existing law, without deference to the trial court's decision. *Lable & Co. v. Flowers*, 104 Ohio App.3d 227, 233, 661 N.E.2d 782 (9th Dist.1995); *Cubick*, at ¶ 20 (whether a claim is warranted under existing law is a legal issue reviewed de novo). This de novo standard likewise governs our review of a court's award under Civ.R. 11 for the same reason. *Id.*; *Burns v. Henne*, 115 Ohio App.3d 297, 302, 685 N.E.2d 294 (2d Dist.1996).

**{¶46}** The remaining arguments under Appellants' second assigned error advance the same contention, i.e., the trial court erred by finding Appellants' pursuit of their legal arguments was frivolous conduct warranting sanctions.

SUMMARY JUDGMENT ARGUMENTS

**{¶47}** As stated, Henderson's complaint alleges seven causes of action, seeking in part to quiet title and for declaratory judgment under the 1989 DMA against Appellees regarding the mineral rights relative to the property owned by Henderson. Appellees counterclaimed and sought to quiet title in favor of Haverfield and for declaratory judgment that she is the owner of the mineral rights underlying the subject property.

**{¶48}** Henderson moved the court to stay the proceedings pending the Ohio Supreme Court's decision to consider comparable issues in other cases. The proceedings resumed once the Supreme Court issued its decision in *Corban* on September 15, 2016.

**{¶49}** Although the parties' causes of action were filed before the Supreme Court's decision in *Corban*, their competing summary judgment motions were filed after *Corban*. In January of 2017, Henderson moved for summary judgment in its favor relying in part on Justice Pfeifer's partial dissent in *Corban*. Henderson's motion was based in large part on the impact of *Corban*, which he argued violated his federal constitutional rights. Henderson claimed the application of the 2006 DMA violated the Fifth and Fourteenth Amendments to the U.S. Constitution because it destroyed or eliminated the conclusive presumption of abandonment and ownership Henderson acquired under the 1989 DMA.

Appellants argued *Corban's* application of the 2006 DMA results in an unconstitutional taking of his substantive property right. (Jan. 23, 2017 Summary Judgment Motion).

**{¶50}** Appellees filed a competing summary judgment motion on February 13, 2017, arguing that Henderson's constitutional taking argument was expressly rejected by the Ohio Supreme Court in *Corban* based on its conclusion that "the conclusive presumption was not a vested substantive right, but a procedural evidentiary rule[,]" and because Henderson did not comply with certain procedural requirements, he never acquired the right. Consequently, because Henderson never acquired the substantive right, Appellees claimed he had no property right and *Corban* required the trial court to quiet title to the mineral rights in Haverfield's favor. (Feb. 13, 2017 Summary Judgment Motion 13-14.) Henderson filed an opposition to Appellees' summary judgment motion on February 28, 2017.

**{¶51}** The trial court summarized the parties' arguments at the March 20, 2017 summary judgment hearing: "[T]he issue before the Court is whether the Dormant Mineral Act of 2006 applies in this case as articulated in *Corban v. Chesapeake* or whether a presumptive property right was acquired by Plaintiffs prior to the 2006 Act that gives them protection under the United States Constitution."

**{¶52}** At that hearing, counsel for Henderson again stated they were not challenging *Corban's* interpretation of Ohio law, but instead arguing that a federal question remained, explaining there is "a distinction about what is property under the Federal Constitution versus what [the Ohio Supreme Court in *Corban* was] looking at as a vested right under Ohio law." Appellants claimed under federal law Henderson's cause of action arising via the 1989 DMA was a protected property right that was taken in violation of the Fifth and Fourteenth Amendments via the Ohio Supreme Court's decision in *Corban*. (March 20, 2017, Tr. 3-6.)

**{¶53}** To the contrary, Appellees argued Henderson's theory failed on several grounds. Among other reasons, they claimed the U.S. Supreme Court already decided these federal constitutional arguments when it denied certiorari in a case raising these precise arguments. (March 20, 2017, Tr. 19.) Appellees also pointed to two other trial court decisions—one in Harrison and the other in Belmont County—rejecting appellants' federal constitutional arguments.

**{¶54}** After the summary judgment hearing, but before the trial court issued its decision on the merits, Henderson moved to dismiss the entire case on May 3, 2018. Henderson asked the court to dismiss in light of the Seventh District's decision in another appeal which, according to Henderson, rejected the only remaining issue before the trial court, i.e., whether rights conveyed to surface owners via R.C. 5301.56, in effect before 2006, constituted property rights protected by the U.S. Constitution. *See Lower Valley Farm, LLC v. Croskey*, 7th Dist. Mahoning No. 16 HA 0010, 2018-Ohio-814, ¶ 35 (holding in part that *Corban's* description of the conclusive presumption established by the 1989 law as one that was "procedural in nature" consequently established that a change in the right "does not alter a vested substantive right."). *Lower Valley* was decided March 28, 2018. Appellants moved to dismiss all claims 36 days later.

**{¶55}** Appellees opposed the dismissal of their claims and reasserted their desire to have the case adjudicated on the merits pursuant to their summary judgment motion. In response, the court dismissed Appellants' affirmative claims only.

**{¶56}** Appellants did not thereafter renew Henderson's opposition to Appellees' summary judgment motion. But the parties filed competing motions about an extension of time regarding an agreed judgment entry dismissing the case, which never came to fruition.

**{¶57}** Thereafter, the trial court granted Appellees summary judgment on September 17, 2018, without analysis.

<u>APPLICABLE LAW</u>

**{¶58}** Because we are not ruling on the merits of the parties' summary judgment arguments, we do not conduct an all-encompassing review and analysis of Ohio's Dormant Mineral Act and Appellants' alleged federal constitutional violations and arguments. Instead, we address the parties' arguments and the law necessary for the limited determination before us, i.e., whether no reasonable lawyer would have raised these arguments in light of the existing law. *State ex rel. DiFranco*, 144 Ohio St.3d 571 at ¶ 15.

**{¶59}** As stated, the trial court determined that Appellants' arguments were reasonable when they were raised in Henderson's January 23, 2017 summary judgment motion, but it found that less than a month later, or as of February 13, 2017, Appellants'

arguments became frivolous conduct in light of decisions rendered by two other Ohio courts of common pleas addressing similar claims and since the U.S. Supreme Court denied certiorari in *Walker v. Shondrick-Nau* ____U.S. ___, 137 S.Ct. 824, 2016-Ohio-5793, which raised the same issues.

**{¶60}** It is an understatement that the enactment of the 2006 DMA caused a flurry of litigation and created unforeseen issues and arguments throughout Ohio courts. In fact, after Appellants filed their lawsuit in this case in August of 2013, this Court in April of 2014 held that the 2006 DMA only applies prospectively. *Walker v. Shondrick-Nau*, 7th Dist. Noble No. 13 NO 402, 2014-Ohio-1499, 2014 WL 1407942, ¶ 37, *rev'd,* 149 Ohio St.3d 282, 2016-Ohio-5793, 74 N.E.3d 427. We also found that the 1989 DMA was self-executing, and thus, in the absence of a savings event, the mineral interest automatically reunited with the surface estate. *Id.* at ¶ 39. Our decision in *Walker* was eventually reversed via *Corban*.

**{¶61}** In *Corban*, the Supreme Court was asked to address certified questions of Ohio law raised by the Southern District of Ohio, Eastern Division while it was addressing competing summary judgment motions regarding the DMA. *Corban v. Chesapeake Expl., L.L.C.*, 149 Ohio St.3d 512, 2016-Ohio-5796, 76 N.E.3d 1089, ¶ 1.

**{¶62}** Upon expounding its decision, *Corban* states that the 1989 DMA provided a "conclusive presumption" of abandonment, an evidentiary device, and not an automatic vesting of the right in the surface owner. *Id.* at ¶ 25-26. *Corban* provides this explanation, not in response to a constitutional challenge based on a federal taking argument, but upon overruling the argument that the 2006 DMA violated the Ohio Constitution's Retroactivity Clause. *Id.*

**{¶63}** *Corban* does not address the U.S. Constitution or whether its decision and application of the 2006 DMA constitutes a taking in violation of the U.S. Constitution. *Id.*

**{¶64}** As stated, Justice Pfeifer concurred in part and dissented in part, and his dissent, joined by Justice O'Neill, raised the issue pursued by Appellants here. Justice Pfeifer first concludes that the *Corban* lead opinion results in an unconstitutional retroactive law in violation of the Ohio Constitution, explaining: "The 1989 ODMA did not merely create a simplified way to prove abandonment in a quiet-title action; instead, *on its own,* it vested in the surface owner the interest in the minerals under the surface. * * *

That the mineral interest is 'vested in the owner of the surface' means that there is no further procedure necessary to complete the reunification of the mineral rights with the surface rights." (Emphasis sic.) *Corban* at ¶ 133 (Pfeifer, J., concurring in part and dissenting in part). Springing from this conclusion, Justice Pfeifer then opined that "applying the 2006 amendment to surface owners whose rights to mineral interests had vested pursuant to the 1989 ODMA constitutes nothing less than a taking * * *." *Id.* at ¶ 140.

{¶65} Among other cases, Appellants' summary judgment argument also relied on *Greyhound Food Mgt., Inc. v. City of Dayton*, 653 F.Supp. 1207, 1218 (S.D.Ohio 1986), *aff'd and remanded,* 852 F.2d 866, (6th Cir.1988), arguing the retroactive application of the 2006 DMA constitutes a due process violation and an unconstitutional taking of Henderson's cause of action and corresponding remedy. *Greyhound* held in part that an insurer's subrogation causes of action were property under the Fifth Amendment's Taking Clause. *Id.*

{¶66} Nearly a year and a half after *Corban*, we issued our decision in *Lower Valley Farm, LLC v. Croskey*, 7th Dist. Mahoning No. 16 HA 0010, 2018-Ohio-814. Our March 28, 2018 *Lower Valley* decision involved similar legal arguments and the same counsel representing Henderson. In *Lower Valley*, the trial court had granted summary judgment in favor of the surface owner before *Corban* was decided based on our decision in *Walker, supra*. We then reversed based on *Corban* and held, in part, that the 2006 DMA applied. Upon considering whether we had to remand the case for the trial court to rule on the "other defenses" raised, we held:

> It is clear from the Ohio Supreme Court's characterization, that a conclusive presumption is neither a property right nor a vested substantive right. It is simply an evidentiary device used in litigation. Therefore, any modification to, or 'taking' of, the presumption cannot be held to be unconstitutional as alleged by Lower Valley. * * * Given the Ohio Supreme Court's clear characterization of the conclusive presumption, a remand on this issue is unnecessary. Summary judgment in the * * * Defendants' favor is proper.

*Id.* at ¶ 31-32. *Lower Valley* was not appealed to the Ohio Supreme Court.

**{¶67}** Appellees and the trial court also rely on a few trial court cases. In *Miller v Kinney*, Belmont C.P. No. 14-CV-178 (January 27, 2017), the Belmont County Common Pleas Court granted a motion to dismiss on this same ground and found the 2006 DMA was not unconstitutional and did not result in an unconstitutional taking or denial of due process. And according to the trial court's May 10, 2021 decision, *Gabriel v. Tweedy*, Harrison C.P. No. CVH-2013-0112 (Feb. 13, 2017), is a Harrison County Court of Common Pleas case that granted a motion to dismiss in a case that raised substantially similar due process and taking arguments.

FRIVOLOUS CONDUCT HEARING

**{¶68}** The trial court held the attorney's fee hearing on February 22, 2019. At the hearing, Appellees urged the court to find that post-*Corban*, it was clear Henderson had no valid theory of law under which he could prevail and Appellants' continued arguments were frivolous.

**{¶69}** Appellants, on the other hand, urged the trial court to reject Appellees' frivolousness argument. They asserted they were advancing reasonable and yet undecided arguments under federal law consistent with other attorneys litigating comparable DMA cases throughout Ohio.

**{¶70}** Two lawyers testified on Henderson's behalf that they raised similar post-*Corban* arguments. Daniel Corcoran testified he is an attorney who was involved in mineral rights litigation for approximately seven years. In 2018, he was a presenter at an OSBA oil and gas seminar on the topic of mineral rights. His presentation included post-*Corban* unresolved issues. One of his PowerPoint slides titled "Unresolved Issues" was introduced at the hearing. One of the identified "unresolved issues" post-*Corban* was whether the decision violates one's substantive rights in violation of federal law.

**{¶71}** Corcoran acknowledged that the Seventh and Fifth District Courts of Appeals were considering these issues at the time but these issues were still unresolved because these are only intermediary state courts of appeals. Corcoran raised similar federal constitutional arguments, and even at the time of the hearing, Corcoran opined, "it's an open question." (Tr. 63-66, 72-74.)

**{¶72}** Attorney Josh O'Farrell also testified and said he had been a lawyer since 2010 and approximately 80 percent of his legal work was devoted to oil and gas issues.

O'Farrell also raised similar arguments in his cases based on the federal constitutional issues evoked by Justice Pfeifer's partial dissent. O'Farrell agreed these issues were unresolved after *Corban,* and he raised them in order to vet the constitutional application of the opinion under federal law. (Tr. 91-94.)

{¶73} One of Henderson's attorneys and a party to this appeal, Matthew Onest, also testified. He said *Corban* did not address the federal constitutional arguments that they raised on Henderson's behalf here. Onest explained that upon reading the *Corban* decision, he and other lawyers in his firm spent hours examining federal and Sixth Circuit cases assessing whether *Corban* effectively violated due process and constituted an unconstitutional taking. Onest said the issue was neither briefed nor argued before the Ohio Supreme Court. He also testified he and his firm raised this same argument in several trial courts throughout Ohio. (Tr. 103-107, 114.)

{¶74} Onest also testified opposing counsel in a different case he was counsel on in the Fifth District Court of Appeals alleged his firm's appellate arguments, like the ones here, were frivolous, but the court disagreed. (Tr. 108-109.) Onest also said frivolous conduct attorney's fees were also sought, but rejected, against his firm for raising these same arguments in a Jefferson County Court of Common Pleas case. (Tr. 111.) His firm stopped pursuing these federal constitutional claims in Henderson's case once the Seventh District issued its decision in *Lower Valley*. They dismissed Henderson's claims at that juncture because the issue had been fully vetted and rejected in this district. (Tr. 115.)

{¶75} Appellees' only testimony on the issue of frivolousness was their counsel, Owen Beetham. Beetham reaffirmed the statements in his affidavit filed in advance of the hearing. Beetham said after *Corban*, he asked counsel for Henderson to concede and agree to quiet title in favor of his client; the Supreme Court had already conclusively addressed the arguments that they continued to raise; and their arguments were likewise rejected by several trial courts, including *Gabriel v. Tweedy*, *Walker v. Shndrick-Nau*, and *Miller v. Kinney*, *supra*, and the Seventh District Court of Appeals in *Lower Valley Farm v. Croskey, supra*. Beetham also asserted Appellees incurred significant legal expenses attempting to finalize the case and they were unable to access certain royalties being held in escrow as a result of the proceedings.

**{¶76}** Appellees' other witness at the attorney's fee hearing, Attorney Matthew Warnock, testified Beetham's attorney's fees were reasonable. Warnock, who is listed as one of the amici curiae counsel of record on the *Corban* decision, did not testify, nor was he asked at the hearing, whether he thought a reasonable lawyer would have raised these arguments. This is contrary to the trial court's finding in its May 10, 2021 decision, which states: "The Court found Defendants' expert Attorney Matthew Warnock more persuasive in his arguments that the continued litigation after *Corban* and denial of cert[iorari] by the Supreme Court was unwarranted." (May 10, 2021 Judgment, p. 6.) Warnock did not testify in this regard. Warnock did testify, however, that he defended this very issue in Belmont County and said, "for all of the Dormant Mineral Act litigation that I think all of counsel in this room did[,] these are novel and unique issues that came up post *Corban* * * *, as Mr. Onest testified earlier, he had to do a lot of research on these federal cases to come up with a theory." (Feb. 22, 2019 Tr. 129.)

<u>ANALYSIS & CONCLUSION</u>

**{¶77}** As referenced, Henderson's lawsuit was filed well in advance of *Corban*. When faced with the unfavorable lead decision in *Corban*, Henderson's attorneys appear to have conducted themselves as a reasonable attorney would do in this situation—by fully vetting the opinion and exploring whether other viable arguments or avenues of relief existed to advocate in furtherance of their client's claims. Appellants thereafter relied on federal case law, as well as Justice Pfeifer's partial dissenting opinion in *Corban,* to advance their client's position. While not ultimately meritorious, Appellants' arguments were reasonable and based on a cogent argument to extend then-existing law.

**{¶78}** Because "lacking merit" is not synonymous with "frivolous conduct," the trial court's decision is reversed. *State ex rel. DiFranco v. S. Euclid,* 144 Ohio St.3d 571, 2015-Ohio-4915, 45 N.E.3d 987, ¶ 15 ("Frivolous conduct is not proved merely by winning a legal battle or by proving that a party's factual assertions were incorrect.")

**{¶79}** Further, neither the trial court nor this court is bound to follow trial court decisions on the same issue involving different parties. *See In re Lebanon Health Care Ctr.*, 10th Dist. No. 86AP-168 (Aug. 26, 1986) (finding "[a] decision of one branch of a common pleas court is not binding upon any other branch of the same court"); *Cyr v. State Med. Bd. of Ohio*, 10th Dist. Franklin No. 21AP-273, 2022-Ohio-25, ¶ 15; *see*

*also Camreta v. Greene*, 563 U.S. 692, 709, 131 S.Ct. 2020,179 L.Ed.2d 1118, fn 7 (explaining that district court decisions are not binding precedent even in the same district or upon the same judge.)

**{¶80}** Moreover, the U.S. Supreme Court's denial of certiorari is not a ruling on the merits. *United States v. Carver*, 260 U.S. 482, 490, 43 S.Ct. 181, 67 L.Ed. 361 (1923); *al-Alwi v. Trump*, ___U.S. ___, 139 S.Ct. 1893, 1894, 204 L.Ed.2d 1102 (2019). It is simply the court's decision declining to review a case. *Id.* Thus, any reliance on the Supreme Court's denial of certiorari in *Walker v. Shondrick-Nau* ____U.S. ___, 137 S.Ct. 824, 2016-Ohio-5793 (2016), is misplaced.

**{¶81}** As noted, once this court issued its decision in *Lower Valley*, Appellants moved to dismiss their affirmative claims.

**{¶82}** Although the trial court was bound to follow our decision in *Lower Valley*, Ohio's Supreme Court was not. Thus, despite our decision in *Lower Valley*, Appellants could have appealed these same issues to this court; to the Ohio Supreme Court; and then to the U.S. Supreme Court, the highest law of the land on federal constitutional issues. *See generally State v. Burnett*, 93 Ohio St.3d 419, 422, 755 N.E.2d 857, ¶ 46. In order to present these arguments to the U.S. Supreme Court, Appellants had to raise the issues to the trial court before they could pursue the same on appeal. *State v. Wintermeyer*, 158 Ohio St.3d 513, 2019-Ohio-5156, 145 N.E.3d 278, ¶ 10 ("A first principle of appellate jurisdiction is that a party ordinarily may not present an argument on appeal that it failed to raise below.")

**{¶83}** Based on the foregoing, we cannot conclude as a matter of law that no reasonable lawyer would have continued to assert these arguments in light of the existing law.

**{¶84}** Similarly, this court cannot conclude that counsel here willfully violated Civ.R. 11 by filing pleadings that, to the best of their knowledge, information, and belief, were not supported by good grounds or were filed for purpose of delay. *Haubeil & Sons Asphalt & Materials, Inc. v. Brewer & Brewer Sons, Inc.*, 57 Ohio App.3d 22, 565 N.E.2d 1278 (4th Dist.1989), syllabus; *State ex rel. Bardwell v. Cuyahoga Cty. Bd. of Commrs.*, 127 Ohio St.3d 202, 2010-Ohio-5073, 937 N.E.2d 1274, ¶ 8. Instead, the evidence, arguments, and law depict counsel employing reasonable efforts to urge the

trial court to adopt their arguments. There is nothing tending to show Appellants used bad faith tactics or had a dishonest purpose. *Id.* (Civ.R. 11 frivolous conduct "imports a dishonest purpose or some moral obliquity. It implies conscious doing of wrong. It means a breach of a known duty through some motive of interest or ill will. It partakes of the nature of fraud."). Their arguments were subjectively and objectively reasonable. *See Callahan v. Akron Gen. Med. Ctr.,* 9th Dist. Summit No. 24434, 2009-Ohio-5148, ¶ 30 (reversing Civ.R. 11 sanctions because counsel had an adequate legal foundation on which to base the claim).

**{¶85}** Thus, Appellants' second assignment of error has merit. Consequently, we reverse and vacate the trial court's May 10, 2021 decision awarding Appellees attorney's fees and expenses in its entirety.

Waite, J., concurs.

D'Apolito, J., concurs.

_____

For the reasons stated in the Opinion rendered herein, it is the final judgment and order of this Court that the Appellants' second assignment of error has merit. Consequently, we reverse and vacate the trial court's May 10, 2021 decision awarding Appellees attorney's fees and expenses in its entirety, according to law and consistent with this Court's Opinion.  Costs to be taxed against the Appellees.

A certified copy of this opinion and judgment entry shall constitute the mandate in this case pursuant to Rule 27 of the Rules of Appellate Procedure. It is ordered that a certified copy be sent by the clerk to the trial court to carry this judgment into execution.

## <u>NOTICE TO COUNSEL</u>

**This document constitutes a final judgment entry.**